**Brad GROSSMAN, on behalf of himself and all others similarly situated, Plaintiff,**

**v.**

**NOVELL, INC., Robert J. Frankenberg, Raymond J. Noorda, Stephen C. Wise, and Adriaan Rietveld, Defendants.**

No. 95–C–54B.

United States District Court,
D. Utah,
Central Division.

Dec. 5, 1995.

846

Stuart D. Wechsler, Wechsler Skirnick Harwood Halebian & Feffer, New York City, Jay D. Gurmankin, Jay D. Gurmankin, PC, Salt Lake City, UT, Lawrence G. Soicher, Law Offices Lawrence G. Soicher, New York City, for plaintiff.

Jim F. Lundberg, WordPerfect Corporation, Orem, UT, Stephen J. Hill, Snow, Christensen & Martineau, Salt Lake City, UT, Boris Feldman, Nina F. Locker and Keith E. Eggleton, Wilson, Sonsini, Goodrich & Rosati, P.A., Palo Alto, CA, for defendants.

## ORDER

BENSON, District Judge.

This class-action securities fraud suit, brought by and on behalf of Novell stockholders, is before the Court on defendants' motion to dismiss. The parties did not request oral argument on this motion. Having read the memoranda submitted by the parties, being fully apprised, and for good cause shown, the Court makes the following findings and enters the following order.

### I. BACKGROUND

This case concerns statements made by the defendants concerning Novell, Inc.'s merger with WordPerfect Corporation ("WordPerfect"). Novell, Inc. ("Novell") is a publicly traded Utah corporation engaged in the creation and marketing of computer networking software. WordPerfect was a privately held Utah corporation engaged in software development and sales. When Novell announced its merger with WordPerfect, it also announced plans to purchase the Quattro Pro spreadsheet product line from Borland International, Inc. ("Borland").

Plaintiff Brad Grossman ("Grossman") is a shareholder of Novell common stock, which is publicly traded on the NASDAQ. Defendant Raymond J. Noorda is Novell's former chairman. Defendant Robert J. Frankenberg is Novell's president, chief executive officer, and chairman. Defendant Adriaan Rietveld is the former chief executive officer of WordPerfect and president of Novell's new WordPerfect/Novell applications group. Defendant Stephen C. Wise is Novell's senior vice president of finance.

### II. ALLEGATIONS

In his complaint, Grossman alleges that between April 27, 1994 and August 19, 1994 (the "class period"), Novell, together with the individual defendants, issued a series of false and misleading statements which, in light of the circumstances under which they were made, had become false or misleading over time. Those statements concerned Novell's financial condition and its expectations for the near-term revenues and earnings to be posted by Novell. Those statements, accord-

ing to the complaint, were false and misleading in that they "overstated the progress and purported success that had been achieved by Novell in its attempts to integrate the operations of two entities purchased by Novell in March 1994 ... and falsely assured investors that the two acquisitions would not have a negative effect on Novell's near term earnings." Complaint, ¶ 5.

The complaint also alleges the defendants made "overly positive public statements" and "knew or recklessly disregarded information available to them throughout the Class Period, that Novell was experiencing, and would continue to experience, operating difficulties resulting from the acquisitions, including a significant decline in WordPerfect's revenues and earnings, increasing operating expenses and charges to income resulting from Novell's need to reduce excessive research and development costs incurred from the integration of the newly acquired spreadsheet business." Complaint, ¶ 6. The plaintiff asserts that these statements made during the Class Period caused Novell stock prices to be artificially inflated, and caused analysts following Novell to upgrade their recommendations of the stock from "hold" to "buy." Complaint, ¶ 37.

The asserted causes of action arise under Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b–5 promulgated by the Securities and Exchange Commission ("SEC") thereunder (17 C.F.R. § 240.10b–5), Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)) and under the common law.

## III. FACTS

In March 1994, Novell announced its plans to merge with WordPerfect. Pursuant to that agreement, Novell agreed to exchange 1,530,100 shares of its common stock (worth approximately $855 million) for WordPerfect.

On April 22, 1994, Novell filed a registration statement as required with the Securities and Exchange Commission ("SEC"). That statement included pro forma combined financial statements indicating that, if Novell and WordPerfect had become one company in the first quarter of 1994, Novell's earnings would have been 3 cents per share higher than they were without WordPerfect. It also warned investors that because of the "inherent difficulties" involved in completing a large merger, "there can be no assurance that ... the integration of the respective businesses will be successful." April 22 Reg. Stmt. at 14. That statement further warned that WordPerfect's market was "characterized by severe competitive pressure" that could "materially adversely affect Novell." *Id.* at 14–15.

On April 27, 1994, the Dow Jones news wire reported that "Novell said that there are indications WordPerfect is gaining market share in the Windows word processing software marketplace, from less than 20% in 1992 to more than 40% today." (Defendants' exhibit "E.")[1]

On June 1, 1994, Grossman bought 500 shares of Novell common stock at $17.50 per share.

On June 10, 1994, Novell amended its registration statement with the SEC, including the pro forma financial statements. The amended pro formas revealed that WordPerfect's first quarter results were significantly worse than projected, and that the merger, if completed earlier, would have diluted Novell's net income per share for the six months ending April 30, 1994. *Id.* at 10, 13, 71–72. Novell filed two more amended statements on June 20 and June 23, 1994, reiterating the warnings from the original April 22 statement about the difficulties of large mergers and WordPerfect's competitive market.

On June 24, 1994 (five weeks before the end of the third quarter), Novell completed its merger with WordPerfect. Three days later, the June 27, 1994 *Wall Street Journal* reported:

Frankenberg told Dow Jones that outside observers are wrong in thinking that it will take "a year or more" for products to arrive that take advantage of both Novell's

1. This statement is not attributed to a specific person. Perhaps it could be inferred that defendant Wise is responsible for the statement because the news story mentions his name in rela-

tion to a comment in the previous paragraph. Due to this Court's analysis of this comment, however, the source of the comment is immaterial.

strength in networking of PCS and Word-Perfect's expertise in applications. "We have not slowed down the effort to create new products, we've accelerated it," Frankenberg said.

(Defendants' exhibit "G.") The *Provo Daily Herald* reported on June 28, 1994 that chief executive officer Rietveld called the merger of Novell and WordPerfect "perhaps the smoothest of mergers in recent history." (Defendants' exhibit "H.") The *Wall Street Journal Europe* reported on June 28, 1994 that:

Analysts have speculated that the purchase of WordPerfect, which has been hard-hit in recent years by Microsoft's aggressive marketing, would slow Novell's momentum. But Robert Frankenberg, Novell's chief executive officer, said in an interview that he was pleased with the accelerating pace of product development since the acquisition was announced in March.

(Defendants' exhibit "I.")

According to the plaintiff, these statements made during the Class Period caused Novell stock prices to be artificially inflated and led analysts following Novell to upgrade their recommendation of the stock from "hold" to "buy." Complaint ¶ 37. The first alleged upgrade by an analyst occurred on June 28, 1994.[2]

On Friday, August 19, 1994, Novell announced that its consolidated third quarter earnings would fall between 15 and 20 percent below the published estimates reported by financial analysts, and that Novell would post a $120 million charge against earnings for the quarter, largely for research and development costs incurred integrating its newly acquired Quattro Pro spreadsheet business. The next business day, August 22, 1994, Novell's stock price dropped more than 7 percent in value, from $15.12 per share to

$14.00 per share. On August 26, 1994, Grossman filed this law suit in the Eastern District of New York. The suit was transferred to the District of Utah pursuant to the January 3, 1995 Order of Judge Jack B. Weinstein. Defendants filed the present motion to dismiss on February 10, 1995.[3]

## IV. DISCUSSION AND ANALYSIS

■ In order to state a claim under Section 10(b) of the Exchange Act and SEC Rule 10b–5, a plaintiff must allege: (1) a misrepresentation or omission of a material fact; (2) in connection with the purchase or sale of securities; (3) intent to defraud or recklessness; (4) reliance/causation; and (5) damages. *Basic v. Levinson*, 485 U.S. 224, 241–43, 108 S.Ct. 978, 988–90, 99 L.Ed.2d 194 (1988); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 191 n. 7, 96 S.Ct. 1375, 1380 n. 7, 47 L.Ed.2d 668 (1976). The first and third elements are directly at issue in the instant motion to dismiss.[4]

## A. MISREPRESENTATION OR OMISSION OF MATERIAL FACTS

■ Under the first element of a 10b–5 claim, a plaintiff must allege facts showing the defendants "made an untrue statement of a material fact, or failed to state a material fact." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992). Applying this legal standard to the case at bar, and taking all alleged facts and inferences arising therefrom in the light most favorable to the plaintiff, this Court concludes Grossman's complaint fails to survive Novell's motion to dismiss. This conclusion in inevitable for three reasons.

1. The complaint fails to allege facts showing defendants' statements were material.

■ A fact is material if there is a substantial likelihood it would have actual signif-

---

2. The Court notes that plaintiff Grossman purchased his shares on June 1, 1994—three weeks before the first analyst upgraded the stock.

3. The Court notes that, on October 30, 1995, Novell announced its desire to sell WordPerfect by early 1996. Don Clark, *Novell in Talks to Sell Lines Of WordPerfect*, Wall St. J., Oct. 31, 1995, at A3.

4. The second element appears to be undisputed. The third element is not relevant here because reliance need not be proven where a plaintiff asserts a fraud on the market. *Peil v. Speiser*, 806 F.2d 1154, 1161 (3d. Cir.1986). *See also T.J. Raney & Sons, Inc. v. Fort Cobb, Oklahoma Irrigation Fuel Authority*, 717 F.2d 1330 (10th Cir. 1983). The fifth element, damages, is not raised in the instant motion.

icance in the deliberations of a reasonable investor. *Basic,* 485 U.S. at 232, 108 S.Ct. at 983 (*quoting TSC Industries v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)). A statement is potentially actionable if, when read in light of all the information then available to the market, or a failure to disclose particular information, it conveyed a false or misleading impression. *Pache, et al. v. Wallace, et al.* [Current Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,643, 1995 WL 118457 (E.D.Pa. Mar. 20, 1995). As a matter of law, general statements of corporate optimism are not material, because reasonable investors do not rely upon them when making investment decisions. *See Raab v. General Physics Corp.,* 4 F.3d 286, 289 (4th Cir.1993).

The statements Grossman complains of are statements of corporate optimism. For example, Novell's comment, printed in the April 27, 1994 Dow Jones story, that there are "indications" that WordPerfect "is gaining market share" is a classic statement of corporate optimism. Similarly, Frankenberg's comment printed in the June 27, 1994 *Wall Street Journal* that Novell had "accelerated" its "effort to create new products" is nothing more than an optimistic corporate statement. (Defendants' exhibit "G.") The same is true for the *Provo Daily Herald* June 28, 1994 report that chief executive officer Rietveld called the merger of Novell and WordPerfect "perhaps the smoothest of mergers in recent history." (Defendants' exhibit "H.") Another example is the *Wall Street Journal Europe* report printed on June 28, 1994 that:

> Analysts have speculated that the purchase of WordPerfect, which has been hard-hit in recent years by Microsoft's aggressive marketing, would slow Novell's momentum. But Robert Frankenberg, Novell's chief executive officer, said in an interview that he was pleased with the accelerating pace of product development since the acquisition was announced in March.

(Defendants' exhibit "I.") These statements, like all the others defendants allegedly made to the press, are just the kind that courts typically hold too vague to be actionable. A federal district court in Colorado, for example, held that a company's remark that its product would be "another blowout winner" was no more than a statement of corporate optimism. *See In re Storage Technology Corp. Sec. Litig.,* 804 F.Supp. 1368, 1372 (D.Colo.1992). Because the defendants' statements as alleged in the complaint are mere statements of corporate optimism, they are as a matter of law not "material" as required when pleading under Rule 10b–5.

2. The complaint fails to allege facts showing defendants made material omissions.

A company cannot be liable under Rule 10b–5 for failing to advise investors of an anticipated earnings shortfall unless that company was under a legal duty to disclose that expectation. *Basic v. Levinson,* 485 U.S. at 239 n. 17, 108 S.Ct. at 987 n. 17. Because the complaint does not support an allegation that a legal duty arose to disclose its internal earnings estimates in order to correct a material misstatement, Grossman must show another legal basis for his claim that Novell's failure to publish those internal estimates is actionable. Grossman, however, cannot make that showing. Novell did not have a duty to announce a change in its internal earnings expectations because it did not issue a public projection of third quarter results prior to its August 19 release.[5] Absent such a circumstance, Novell was under no duty to forecast its third quarter earnings. *See, e.g., In re Convergent Technologies Sec. Litig.,* 948 F.2d 507, 516 (9th Cir.1991); *In re Exabyte Corp. Sec. Litig.,* 823 F.Supp. 866, 870 (D.Colo.1993). Therefore Grossman has failed to state a claim against defendants based on an omission of material facts.

3. Novell disclosed the risks of the WordPerfect merger.

The third reason that the complaint fails to state a claim under the first element

---

5. Although Grossman alleges Novell assured investors that the WordPerfect merger would not dilute Novell's "near-term" earnings (Complaint, ¶¶ 32, 33), the Dow Jones article he relies upon mentions "future" results rather than near-term earnings. The statement is too vague to give rise to a duty to reveal internal projections of third-quarter results.

of a 10b–5 claim is that Novell in fact disclosed the risks behind the WordPerfect merger. The purpose of Rule 10b–5's "omission of a material fact" language is to allow plaintiffs to sue companies that fail to disclose risks to potential investors. This language is satisfied at the pleading stage by facts supporting an allegation of non-disclosure of certain risks which the company had a duty to reveal. Courts dismiss securities fraud claims where a company has disclosed the risks affecting future performance. *See, e.g., In re Donald Trump Sec. Litig.*, 7 F.3d 357, 368 (3d. Cir.1993). Securities fraud claims cannot be maintained where defendants have issued detailed cautionary warnings. *See id.*

█ The "bespeaks caution" doctrine "provides a mechanism by which a court can rule as a matter of law (typically in a motion to dismiss . . .) that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1413 (9th Cir.1994). The *In re Worlds of Wonder* Court held that optimistic forward-looking representations are not actionable when cautionary language found elsewhere adequately discloses the risks. *Id.* It does not matter "if the optimistic statements are later found to have been inaccurate or based on erroneous assumptions when made, provided that the risk disclosure was conspicuous, specific, and adequately disclosed the assumptions upon which the optimistic language was based." *Id.* The Tenth Circuit applied this doctrine in *In re Storage Technology Corp. Sec. Litig.*, 147 F.R.D. 232, 237 (D.Colo.1993).

Grossman's allegations of fact fail to state a claim because Novell issued cautionary language adequately disclosing the risks of the merger. Novell's SEC registration statement, filed on April 22, 1994, warned investors that, because of the "inherent difficulties" involved in completing a large merger, "there can be no assurance that . . . the integration of the respective businesses will be successful." April 22 Reg.Stmt. at 14. That statement also warned that WordPerfect's market was "characterized by severe competitive pressure" that could "materially adversely affect Novell." *Id.* at 14–15. When Novell amended its SEC registration statement on June 10, 1994, it updated the pro forma financial statements to show that WordPerfect's first quarter results were significantly worse than projected, and that the merger (if it had occurred earlier) would have diluted Novell's net income per share for the six months ending April 30, 1994. *Id.* at 10, 13, 71–72. Novell amended its SEC statement two more times before completing the merger, on June 20, 1994 and June 23, 1994. Both of those amendments reiterated the warnings from the original April 22 statement about the difficulties of large mergers and WordPerfect's competitive market. These statements are just the kind of "forward-looking representations contain[ing] enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud" that were held to bar suit in *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407 (9th Cir.1994).

The "bespeaks caution" doctrine would bar the present law suit even if the press statements Grossman complains of were more than mere statements of corporate optimism. Under this doctrine, the misleading quality of a statement is nullified where it is accompanied by sufficient cautionary language. In this case, the statements' potential to mislead was offset by the disclosures contained in the SEC registration statements. *See In re Storage Technology Corp. Sec. Litig.*, 147 F.R.D. 232, 237 (D.Colo.1993). Under the bespeaks caution doctrine, "a statement or omission must be considered in context, so that accompanying statements may render it immaterial as a matter of law." *In re Donald Trump Sec. Litig.*, 7 F.3d 357, 368 (3d Cir.1993).

## B. INTENT TO DEFRAUD OR RECKLESSNESS

█ A separate and independent basis for granting defendants' motion to dismiss is the plaintiff's failure to plead facts, required under the third element of a Rule 10b–5 claim, showing defendants acted with an intent to defraud or with recklessness. *Basic v. Levinson*, 485 U.S. 224, 241–43, 108 S.Ct.

978, 988–90, 99 L.Ed.2d 194 (1988); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 191 n. 7, 96 S.Ct. 1375, 1380 n. 7, 47 L.Ed.2d 668 (1976). The complaint does not state sufficient facts showing scienter.

■■■ Under Rule 9(b) of the Federal Rules of Civil Procedure, "all averments of fraud or mistake [and] the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This rule applies in securities fraud cases. *Seattle–First National Bank v. Carlstedt,* 800 F.2d 1008, 1010 (10th Cir.1986). The Tenth Circuit held in *Oppenheimer v. Novell, Inc.* that a "plaintiff must plead facts which, if proven, would logically support an inference that defendant intentionally deceived him; otherwise, a plaintiff could allege fraud simply by making conclusory assertions about a defendant's state of mind." 851 F.Supp. 412, 415 (D.Utah 1994). *Oppenheimer* requires " 'detailed statements' of the specific, fraudulent conduct." *Id.* (*quoting Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 986 (10th Cir.1992)). The complaint does not meet Rule 9(b)'s particularity requirement as described in *Oppenheimer* and *Farlow.*

Grossman argues that scienter may be inferred from "facts showing a motive for committing fraud and a clear opportunity for doing so." Memo. in Opp., p. 25 (quoting *Turkish v. Kasenetz,* 27 F.3d 23, 28 (2d Cir. 1994)). However, in cases where defendants' "motive to commit securities fraud is not readily apparent, the plaintiffs face a more stringent standard for establishing scienter." *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1068–69 (5th Cir.1994). Grossman alleges defendants were motivated to commit fraud by a desire to exchange stock to fund corporate acquisitions, to sell common stock to option holders who might be induced to exercise such options during the class period, to preserve their jobs, and to make personal gains by protecting their jobs and their standing in the community. Grossman does *not* allege any of the defendants personally gained from the allegedly inflated stock price. There is no allegation that any defendant sold Novell stock during the class period. Motive is "not readily apparent" where "there is no allegation that any of the corpo-

rate defendants actually personally profited from the allegedly inflated stock values." *Melder v. Morris,* 27 F.3d 1097, 1102 (5th Cir.1994).

Grossman's argument that a higher share price would improve Novell's ability to make its acquisitions through stock trades is insufficient as a matter of law because Novell agreed on the number of shares it would exchange for WordPerfect *before the start of the class period.* Because the number of shares was fixed, the price per share was not directly related to Novell's ability to purchase WordPerfect. There are no facts supporting Grossman's bare allegations that Novell used or intended to use its allegedly inflated stock to facilitate any other acquisitions.

■■■ Grossman's argument that the individual defendants wanted to keep their jobs and maintain their stature in the community is legally insufficient to establish motive to commit fraud. Those desires are nearly universal in our society. To allow Grossman to go forward with his claim on this basis would be to allow "conclusory assertions about a defendant's state of mind," which is impermissible for the reasons stated in *Oppenheimer v. Novell, Inc.,* 851 F.Supp. 412, 415 (D.Utah 1994). Finally, Grossman's bare allegation that the defendants were motivated to boost Novell's stock price in order to influence the vote of WordPerfect shareholders is unsupportable because WordPerfect was privately held and controlled by four people who had already voted in favor of the merger before the class period began.

The complaint's allegations fail to show defendants acted with an intent to defraud or with recklessness as required by *Basic* and *Ernst & Ernst.* The complaint does not state sufficient facts showing scienter under Rule 9(b) of the Federal Rules of Civil Procedure because its "averments of fraud or mistake [and] the circumstances constituting fraud or mistake" have not been "stated with particularity."

## C. MOTION TO AMEND COMPLAINT

■■■ Although courts liberally grant leave to amend complaints where justice so re-

quires, a court may refuse to allow amendment where "the proposed changes would be futile." *Reagan v. Bankers Trust Co.*, 863 F.Supp. 1511, 1518 (D.Utah 1994) (quoting *New Beckley Min. Corp. v. International Union, United Mine Workers of America*, 18 F.3d 1161 (4th Cir.1994)). Grossman's attempt to raise several new scienter theories in his memorandum opposing the instant motion to dismiss shows the futility of allowing amendment. Furthermore, this Court's conclusion that Novell's SEC registration statements adequately disclosed the potential risks of the WordPerfect merger means that Grossman could not raise any new allegations sufficient to show that investors were mislead about the potential impact of the WordPerfect merger. *See Pompano–Windy City Partners Ltd. v. Bear Stearns & Co.*, 794 F.Supp. 1265, 1291 (S.D.N.Y.1992) (dismissing securities complaint with prejudice in part because defendant's risk disclosure made amendment of complaint futile). The motion to amend must therefore be denied.

## V. CONCLUSION

The plaintiff has failed to show any facts supporting his bare allegations of securities fraud. The statements defendants made to the press were no more than vague statements of corporate optimism and were therefore not "material." The plaintiff has not alleged any facts showing the statements were false when made, or that Novell had a duty to reveal any more than it did. The plaintiff's allegations are not actionable in light of Novell's disclosure of WordPerfect's declining financial performance in its registration statements.

For these reasons, IT IS HEREBY ORDERED THAT defendants' motion to dismiss is GRANTED against Grossman and in favor of Novell on all counts. The plaintiffs' motion to file an amended complaint is DENIED. The clerk of court is directed to enter judgment accordingly.