# UNITED STATES COURT OF APPEALS
## Tenth Circuit
## Byron White United States Courthouse
## 1823 Stout Street
## Denver, Colorado 80294
## (303) 844-3157

Patrick J.  Fisher, Jr.                                    Elisabeth A. Shumaker
Clerk                                                      Chief Deputy Clerk

August 20, 1997


**TO:**  All recipients of the captioned opinion

**RE:**  96-4011, Grossman v. Novell, Inc., et al.
August 8, 1997


Please be advised of the following correction to the captioned decision:

In the attorney designation section on the first page of the opinion, counsel Keith E. Eggleton's name is misspelled; specifically, it should not have an "s" in it.  Please make the correction.


Very truly yours,

Patrick Fisher, Clerk



Susie Tidwell
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 8 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BRAD GROSSMAN,

      Plaintiff-Appellant,

v.

NOVELL, INC., ROBERT J.
FRANKENBERG, RAYMOND J.
NOORDA, STEPHEN C. WISE, and
ADRIAAN RIETVELD,

      Defendants-Appellees.

No. 96-4011

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 95-CV-54)**

---

Andrew D. Friedman, Berman Gaufin & Tomsic, Salt Lake City, Utah (Stuart D. Wechsler, Jay D. Gurmankin, Wechsler Harwood Halebian & Feffer LLP, New York, New York and Lawrence G. Soicher, New York, New York with him on the briefs), for Plaintiff-Appellant.

Boris Feldman, Wilson, Sonsini, Goodrich & Rosati, P.C., Palo Alto, California (Nina F. Locker, Keith E. Eggleton, Wilson, Sonsini, Goodrich & Rosati, Palo Alto, California and Max D. Wheeler, Stephen J. Hill, Snow, Christensen & Martineau, Salt Lake City, Utah with him on the briefs), for Defendants-Appellees.

---

Before **EBEL, KELLY**, and **BRISCOE**, Circuit Judges.

---

**EBEL**, Circuit Judge.

Plaintiff-Appellant Brad Grossman brought this putative shareholder class action in the District of Utah based on alleged statements by Novell, Inc. ("Novell"), a Utah-based company and leading provider of computer network operating software, and by some of its officers, regarding Novell's merger with WordPerfect Corp. ("WordPerfect"), another Utah company and the producer of a leading word processing application. Grossman alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act and common law fraud arising out of a seven percent decline in the price of Novell stock after the company announced disappointing earnings for the third quarter of its 1994 fiscal year. The District Court granted Novell's motion to dismiss, ruling that Plaintiff had failed to allege a materially misleading statement or omission, that Novell had disclosed the risks of the merger, and that Plaintiff had not pled fraud with sufficient particularity. Additionally, the district court denied Plaintiff's request to amend his complaint pursuant to Fed. R. Civ. P. 15(a). Plaintiff now appeals pursuant to 28 U.S.C. § 1291. We affirm.

## Background

This case concerns statements made by defendants, Novell, Inc. and several of its present and past officers and directors,[1] relating to the merger between Novell and WordPerfect and the effect of the merger on Novell's business prospects. Novell, a public company headquartered in Provo, Utah, was the world's leading provider of network operating software. In March 1994, Novell announced it would acquire and merge with WordPerfect, a privately held company based in Orem, Utah. WordPerfect developed and sold software applications, including a leading word processing program. To complete the WordPerfect merger, Novell issued stock, which it exchanged for the outstanding WordPerfect shares. In connection with the issuance of this stock, Novell filed a registration statement with the Securities and Exchange Commission ("SEC") on April 22, 1994, and filed three amendments to the registration statement in June 1994. During this same time Novell purchased the Quattro Pro spreadsheet program from Borland, Inc. for approximately $145 million in cash.

The registration statement included a warning that the integration of Novell and WordPerfect could be difficult due to intense competition in WordPerfect's

---

[1]Defendant Raymond J. Noorda is Novell's former chairman. Defendant Robert J. Frankenberg is Novell's president, chief executive officer, and chairman. Defendant Adriaan Rietveld was at the time of the merger the chief executive officer of WordPerfect, and later became president of Novell's WordPerfect/Novell applications group. Defendant Stephen C. Wise is Novell's senior vice-president for finance.

market sector and the company's declining financial performance, and cautioned that Novell's earnings and stock price could fluctuate in the quarters following the merger. The registration statement further cautioned that the acquisitions of WordPerfect and Quattro Pro could be difficult because they were large acquisitions in new markets where Novell did not have management or marketing experience. The registration statement warned that no assurance could be given that the various businesses could be successfully integrated. Also, the dominant competition expected from Microsoft was stressed. In addition, Novell warned that the merger and acquisition would lead to higher expenditures in sales, marketing and support, and higher other costs. Novell predicted that its future earnings and stock prices could be subject to "significant volatility, particularly on a quarterly basis" and warned that WordPerfect's market was "characterized by severe competitive pressure" that could "materially adversely affect Novell."[2]

In the first amendment to the registration statement, which was filed on June 10, 1994, Novell amended its pro forma financial statements to reflect that WordPerfect's first quarter results were significantly worse than projected, and that if the merger had been completed by the end of the second quarter, Novell's

---

[2]Grossman, the defendants, and the district court all referred liberally to the Registration Statement and amendments thereto, both below and on appeal, even though they were not explicitly incorporated in the complaint. Accordingly, we refer to them as well based on the apparent consent of the parties that they can be considered in this Motion to Dismiss.

net income per share would have been diluted by $.09 per share. This amendment, as well as the later amendments filed on June 20 and June 23, 1994, reiterated the warnings included in the initial registration statement. In addition, further disclosures were made. For example, the June 10 amendment to the Registration Statement advised that "disruptions associated with the merger and the acquisition of Quattro Pro have resulted in declines in sales of Quattro Pro in recent periods." Also, significant deteriorations in the sales and profitability of WordPerfect were disclosed.

The merger was completed on June 24, 1994, five weeks before the end of the third quarter. On August 19, 1994, Novell announced that its consolidated third quarter earnings would fall between 15 and 20 percent below estimates previously published by financial analysts, and that the company would recognize a $120 million charge against earnings for the quarter.[3] The next business day, August 22, 1994, Novell's stock price fell from $15.12 per share to $14 per share, a 7% drop.

Following the decline in the Novell stock price, Grossman, a Novell shareholder, brought this action, seeking to certify a class of all purchasers of Novell stock during the period between April 27, 1994, and August 19, 1994 (the

_____

[3]The charge reflected $114.4 million for research and development costs associated with the acquisition of the Quattro Pro software program from Borland, Inc., and $5.8 million in merger expenses.

"Class Period"). The central allegation in the complaint is that beginning on April 27, 1994, Novell issued a series of false and misleading statements and omissions of material fact to the press and to financial analysts regarding the effect of the merger on Novell's then existing operations and near term earnings potential. Significantly, Grossman does not claim false or misleading statements in the registration statement or amendments thereto. The allegedly false and misleading statements and omissions to the press allegedly inflated the price of Novell stock during the period. The specific statements alleged by Grossman to have been false and misleading are the following:

(1)    a statement by defendant Wise on April 27, 1994, that there were "indications" that WordPerfect was "gaining market share . . . from less than 20% in 1992 to more than 40% today" and that "the combination wouldn't dilute future earnings;"

(2)    a statement by defendant Frankenberg, on June 27, 1994, that Novell had experienced substantial success in the integration of the sales forces and operations of WordPerfect and that the merger process had been moving "faster than we thought it would;" Frankenberg also stated in the same June 27, 1994, publication that "we have not slowed down the effort to create new products, we've accelerated it" and that he believed there was "a compelling set of opportunities" available to the new Novell;

(3)    Rietveld's statement on June 28, 1994, that the merger had been "perhaps the smoothest of mergers in recent history;"

(4)    Frankenberg's statement on June 28, 1994, that "he was pleased with the accelerating pace of product development since the acquisition was completed in March;" and,

- 6 -

(5)    Novell's statement on July 20, 1994, that "[b]y moving rapidly to a fully integrated sales force, we are leveraging our combined knowledge of the expanding scope of network solutions,' . . . 'Novell expects that network applications will quickly reshape customer expectations and expand the role of our channel partners in supporting end-user network solutions."

Grossman argues not only that these statements were misleading, but that they gave rise to a duty on behalf of Novell to disclose that WordPerfect had continued to experience declines in sales and revenues and increases in expenses; that it had expended excessive amounts on its new spreadsheet research and development; that it would be required to take $120 million in charges against third quarter earnings; and that earnings projections for the third quarter of 1994 published by market analysts would not be achieved.

These statements and omissions were alleged to have given rise to three causes of action: (1) violation of § 10(b) of the Securities and Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; (2) violation of Exchange Act § 20(a), 15 U.S.C. § 78t(a); and (3) common law fraud. Grossman alleges that this series of misstatements and omissions created a "fraud on the market" which both falsely inflated Novell's stock price and gave rise to a duty to disclose accurate third quarter earnings projections.

According to Grossman, financial analysts were initially pessimistic about the near-term benefits of the WordPerfect merger, leading to a 25% decline in the value of Novell stock in the weeks prior to the Class Period. However, because of the statements, various analysts upgraded their evaluation of Novell to "buy." Additionally, by falsely inflating the price of Novell stock, defendants were able to ensure the merger would be completed, and that 90% of shareholders would vote to approve the merger, thus enabling Novell to use the Pooling Method in accounting for the merger. Finally, the fraud allegedly enabled defendants to raise capital by inducing option holders to exercise their stock options. The fraud was allegedly exposed on August 19, 1994, when Novell announced its third quarter earnings.

In response to the complaint, Defendants filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 9(b). Defendants argued that: (1) the alleged statements were not material; (2) Novell had no duty to disclose financial projections for the third quarter during the class period; and (3) plaintiffs had not pled the circumstances amounting to fraud, and specifically scienter on the part of the defendants, with sufficient particularity.

The district court granted the defendants' motion to dismiss. The court concluded that: (1) Plaintiff had not pled facts showing material misstatements or omissions; (2) Novell had sufficiently disclosed the risks of the merger; and (3)

Plaintiff had not pled scienter with sufficient particularity. Grossman v. Novell, Inc., 909 F. Supp. 845, 848-50 (D. Utah 1995). Additionally, the court denied Grossman's motion to amend the complaint, ruling that any amendment would be futile. Id. at 851-52. Grossman now appeals, claiming the district court erred on the three securities law issues, and that the court abused its discretion in denying leave to amend the complaint. We have jurisdiction under 28 U.S.C. § 1291.

## Discussion

Grossman's claims have been brought under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.[4] To state a claim under Rule 10b-5, a plaintiff must allege: (1) a misleading statement or omission of a material fact; (2) made in connection with the purchase or sale of securities; (3) with intent to defraud or recklessness; (4) reliance; and (5) damages. Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 986 (10th Cir. 1992). Defendants do not dispute that the alleged statements

---

[4]Although Appellant also raised claims under § 20(a) of the Exchange Act, 15 U.S.C. 78t(a), and common law fraud, those claims were not specifically argued in the briefs and were not discussed by the district court. Accordingly, Grossman has waived any separate arguments he may have as to dismissal of those claims.

Additionally, because Grossman's complaint was filed on August 25, 1994, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 743 (codified at 15 U.S.C. § 77z-1, 77z-2, 78u-4, 78u-5, 77t, 78o, 78t and 78u), is not applicable here. The PSLRA applies only to cases filed after December 22, 1995, the date the statute was enacted. See id. § 108.

and omissions were made in connection with the purchase or sale of securities, and damages were likewise not disputed below. Additionally, where a claim is based on the "fraud on the market" theory, as this one is, an investor's reliance on public material misrepresentations is presumed. Basic, Inc. v. Levinson, 485 U.S. 224, 247 (1988). Thus, in assessing the sufficiency of Grossman's complaint, we focus on whether Grossman has adequately alleged that defendants made a misleading statement or omission of material fact, and that the statement or omission was made with scienter.

## Standard of Review

We review de novo a district court decision to dismiss a complaint pursuant to Fed. R. Civ. P. 12(b)(6).[5] A Rule 12(b)(6) dismissal will be upheld "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." Roman v. Cessna Aircraft Co., 55 F.3d 542, 543 (10th Cir. 1995) (quotations omitted). In reviewing a Rule 12(b)(6) dismissal, "we must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." Id. In

---

[5]A dismissal for failure to plead fraud with sufficient particularity under Fed. R. Civ. P. 9(b) is reviewed under the same standards as a Rule 12(b)(6) dismissal. Seattle-First Nat'l Bank v. Carlstedt, 800 F.2d 1008, 1011 (10th Cir. 1986).

the securities context, Rule 12(b)(6) dismissals are difficult to obtain because the cause of action deals primarily with "fact-specific inquir[ies]" such as materiality. Basic, 485 U.S. at 240; Fecht v. Price Co., 70 F.3d 1078, 1080-81 (9th Cir. 1995) (noting that materiality is typically a jury question), cert. denied, 116 S. Ct. 1422 (1996). Nonetheless, courts do not hesitate to dismiss securities claims pursuant to Rule 12(b)(6) where the alleged misstatements or omissions are plainly immaterial, or where the plaintiff has failed to allege with particularity circumstances that could justify an inference of fraud under Rule 9(b). See, e.g., Farlow, 956 F.2d at 990; San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 808-12 (2d Cir. 1996); In re Donald Trump Sec. Litig., 7 F.3d 357, 371-73 (3d Cir. 1993), cert. denied, 114 S. Ct. 1219 (1994); In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1413 (9th Cir. 1994), cert. denied, 116 S. Ct. 185 (1995).

# I

## Grossman's Allegations of Securities Fraud

The district court dismissed Grossman's complaint under three distinct theories. First, the court concluded the statements alleged by Grossman were not material misstatements or omissions. Grossman, 909 F. Supp. at 848-49. The court reasoned that the statements were not sufficiently specific, but rather were the sort of "vague statements of corporate optimism" courts have found not to be

actionable under the securities laws, and that these general statements of corporate optimism did not give rise to a duty on the part of Novell to disclose third quarter earnings projections. Id. Second, the court held that even if the statements were materially misleading, any effect on Novell's stock price caused by the statements was nullified by cautionary language in Novell's registration statements, and thus Grossman's claim was barred under the "bespeaks caution" doctrine. Id. at 850. Third, the court concluded Grossman had not alleged fraud with sufficient specificity under Fed. R. Civ. P. 9(b). Id. at 851-52.

We agree with the district court that Grossman has failed to state a cause of action under the securities laws. For several reasons, none of the alleged statements or omissions satisfies the materiality element of a 10b-5 claim. Although several of the alleged statements were properly characterized as a "vague statement of corporate optimism," the remainder of the statements were sufficiently specific that dismissal under that rubric was improper. However, the remaining statements and omissions were properly dismissed either because Grossman has not made sufficient allegations that many of the statements were actually false when made or because the specific cautions in Novell's registration statement and amendments thereto precluded the possibility that the statements could have been materially misleading. Further, we agree with the district court's conclusions that Novell had no duty to disclose the information allegedly omitted,

because Novell did not make any materially misleading statements that would give rise to such a duty.  Because we dispose of all claims on these grounds, we do not address the issue whether Grossman pled scienter with sufficient particularity to satisfy Fed. R. Civ. P. 9(b).

## A.

## <u>Materiality</u>

To satisfy the first element of a 10b-5 claim, a plaintiff must allege facts showing the defendant made an untrue statement of material fact, or failed to state a material fact necessary to make the statements that were made not misleading. 17 C.F.R. § 240.10b-5.  A statement or omission is only material if a reasonable investor would consider it important in determining whether to buy or sell stock. See <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 449 (1976); <u>Basic</u>, 485 U.S. at 231-232.  Whether information is material also depends on other information already available to the market; unless the statement "significantly altered the 'total mix' of information" available, it will not be considered material.  <u>TSC Indus.</u>, 426 U.S. at 449.

In applying the materiality element, courts have identified several categories of statements which are not considered materially misleading.  Two such categories are relevant to the statements and omissions at issue here: statements considered immaterial because they are only vague statements of

- 13 -

corporate optimism, and statements considered immaterial because other documents available to the investing public "bespoke caution" about the subject matter of the alleged misstatement at issue.

Statements classified as "corporate optimism" or "mere puffing" are typically forward-looking statements, or are generalized statements of optimism that are not capable of objective verification.[6]  Vague, optimistic statements are not actionable because reasonable investors do not rely on them in making investment decisions.  See  Raab v. General Physics Corp., 4 F.3d 286, 289 (4th Cir. 1993) (statements in Annual Report that company expected "10% to 30% growth rate over the next several years" and was "poised to carry the growth and success of 1991 well into the future" held to be immaterial "soft 'puffing'" statements); San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 811 (2d Cir. 1996) (statement that company was "'optimistic' about [its earnings] in 1993" and that it "*should* deliver income growth consistent with its historically superior performance" held to be mere "puffery" and to "lack the sort of definitive positive projections that might require later correction") (emphasis in original) (internal quotations omitted); Hillson

---

[6]This is not to say that forward-looking statements cannot be material.  The Supreme Court in Virginia Bankshares v. Sandberg, 501 U.S. 1083, 1093-94 (1991), made it quite clear that a statement as to beliefs or opinions (there an opinion as to the fair current value of a tender price) may be actionable if the opinion is known by the speaker at the time it is expressed to be untrue or to have no reasonable basis in fact.

<u>Partners Ltd. v. Adage, Inc.</u>, 42 F.3d 204, 212-14 (4th Cir. 1994) (statements in press release that year would "produce excellent results" and that "significant sales gains should be seen as the year progresses" held to be mere general predictions and not material as a matter of law); <u>Searls v. Glasser</u>, 64 F.3d 1061, 1066-67 (7th Cir. 1995) (holding that statements that a company was "recession-resistant" and that it would maintain a "high" level of growth were too vague to constitute material statements of fact); <u>In re Storage Technology Corp. Sec. Litig.</u>, 804 F. Supp. 1368, 1372 (D. Colo. 1992) (statement of being "proud" of a particular product and opining that it would be a "blowout winner" were mere puffing and could not support a claim because no reasonable person would be misled by them); <u>In re Software Publishing Sec. Litig.</u>, 1994 WL 261365, at *4-*7 (N.D. Cal. Feb. 2, 1994) (dismissing claims based on statement that company believed it had "the combination of people and products in place to be successful" and was "now positioned to effectively compete") <u>Compare</u> <u>Marx v. Computer Science Corp.</u>, 507 F.2d 485, 490 (9th Cir. 1974) (prediction that company "expects . . . a net income of approximately $1.00 a share" for fiscal year to close in two months held to be a material statement); <u>Virginia Bankshares v. Sandberg</u>, 501 U.S. 1083, 1094-95 (1991) (director's statement in a proxy solicitation that the tender price of the company's stock of $42 a share was "high" and "fair" to minority shareholders was a material statement in that context where stock

- 15 -

valuation was subject to objective methods of valuation and the directors' opinions were shown to be false).

Forward-looking representations are also considered immaterial when the defendant has provided the investing public with sufficiently specific risk disclosures or other cautionary statements concerning the subject matter of the statements at issue to nullify any potentially misleading effect. This doctrine, which is called the "bespeaks caution" doctrine, "provides a mechanism by which a court can rule as a matter of law (typically in a motion to dismiss for failure to state a cause of action[7] or a motion for summary judgment) that defendants' forward-looking representations contained enough cautionary language or risk disclosure to protect the defendant against claims of securities fraud." In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1413 (9th Cir. 1994), cert. denied, 116 S. Ct. 185 (1995) (citation omitted). However, not every risk disclosure will be sufficient to immunize statements relating to the disclosure; rather, "the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions . . . which the plaintiffs challenge." Trump, 7 F.3d at 371. At bottom, the "bespeaks caution" doctrine stands for the "unremarkable proposition that statements must be analyzed in context" when

---

[7]The "bespeaks caution" doctrine may properly be applied in considering a motion to dismiss. See, e.g., Trump, 7 F.3d at 371; Philip Morris, 75 F.3d at 811; Romani, 929 F.2d at 879; Worlds of Wonder, 35 F.3d at 1413.

determining whether or not they are materially misleading. Rubinstein v. Collins, 20 F.3d 160, 167 (5th Cir. 1994).

The Tenth Circuit has not expressly endorsed the "bespeaks caution" doctrine. However, two district court opinions in this circuit have applied the doctrine. See Grossman, 909 F. Supp. at 850; In re Storage Technology Sec. Litig., 147 F.R.D. 232, 237 (D. Colo. 1993). Moreover, every circuit that has addressed the issue has endorsed the doctrine. See Gasner v. Board of Supervisors, 103 F.3d 351, 358 (4th Cir. 1996); In re Worlds of Wonder Sec. Litig., 35 F.3d 1407, 1413 (9th Cir. 1994), cert. denied, 116 S. Ct. 185 (1995); In re Donald Trump Sec. Litig, 7 F.3d 357, 371-73 (3d Cir. 1993), cert. denied, 114 S. Ct. 1219 (1994); Moorhead v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 949 F.2d 243, 245-46 (8th Cir. 1991); Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1040 (6th Cir. 1991); I. Meyer Pincus & Assocs. v. Oppenheimer & Co., 936 F.2d 759, 763 (2d Cir. 1991); Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 (1st Cir. 1991); Rubinstein v. Collins, 20 F.3d 160, 167 (5th Cir. 1994); Saltzberg v. TM Sterling/Austin Assocs., Ltd., 45 F.3d 399, 400 (11th Cir. 1995). Cf. PSLRA, which has created a statutory version of the doctrine. 15 U.S.C. § 77z-2; see Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1213 & n. 23 (1st Cir. 1996) (discussing statutory version of "bespeaks caution" found in PSLRA).

Accordingly, we hold that the "bespeaks caution" doctrine, as articulated in this opinion, is a valid defense to a securities fraud claim in the Tenth Circuit.

In assessing the materiality of the alleged statements and omissions at issue here, we must consider the context in which the statements were made. We note here that the statements complained of are all contained in press releases or interview statements, and were made in conjunction with a registration statement that contained many explicit risk factors and warnings which Grossman has not challenged as inadequate. The three page long "Risk Factors" discussion in Novell's initial registration statement contained numerous cautionary statements, and the amendments to the registration statement contained numerous cautionary statements as well. In the initial registration statement, Novell made specific, repeated disclosures regarding the precise subjects addressed in the alleged misstatements. Novell outlined the complexity of integrating the two companies, and highlighted the risks involved in entering the competitive software applications market.[8] Importantly, the statements specifically disclosed that

---

[8]The registration statement disclosed that integration might be "difficult and require a greater period of time to accomplish" than mergers in other businesses; that "Novell has historically not had any presence in the software applications market and accordingly may lack the management and marketing experience" necessary to successfully integrate the two companies; and that the relevant market was "intensely competitive."

revenues would tend to fluctuate following the merger,[9] and Amendment No. 1 specifically stated that short-term quarterly earnings were diluted by $.09 (over 15%) per share through the second quarter. With respect to quarterly earnings in particular, Novell's cautionary statements could hardly have been more explicit:

> [F]uture earnings and stock price could be subject to significant volatility, particularly on a quarterly basis. [Novell's] revenues and earnings may be unpredictable. . . . [Q]uarterly financial results are difficult to predict and quarterly financial results may fall short of anticipated levels.

These disclosures were highly specific, very factual, and directly address the predictive statements that form the basis of Grossman's complaint. In a fraud on the market case, those cautions cannot be ignored in construing the materiality of optimistic predictions.

We conclude that the following statements were correctly determined by the district court as a matter of law to be immaterial statements of corporate optimism: 1) Frankenberg's statements that Novell had experienced "substantial success" in integrating the sales forces of the two companies, that the merger was moving "faster than we thought," and that the merger presented a "compelling set of opportunities" for the company; and 2) Novell's statements that "[b]y moving

---

[9]The statement disclosed that WordPerfect's revenues tended "to fluctuate , sometimes significantly, on a quarter-by-quarter basis," and that such fluctuation could "contribute to the volatility of the trading price of Novell Common Stock in any given period following the merger." In a subsequent portion of the registration statement, Novell further warned that competitive market conditions could "materially adversely affect WordPerfect's operating results and financial condition." Id. at 140-41

- 19 -

rapidly to a fully integrated sales force, we are leveraging our combined knowledge of the expanding scope of network solutions," and that it "expects that network applications will quickly reshape customer expectations." These are the sort of soft, puffing statements, incapable of objective verification, that courts routinely dismiss as vague statements of corporate optimism.

We also agree with the district court's conclusion that dismissal of certain portions of Grossman's complaint was proper under the "bespeaks caution" doctrine. Wise's statement regarding the dilution of "future" earnings is a forward-looking projection, the subject matter of which is covered in great detail in the registration statement. In the registration statement, Novell clarified its expectation that earnings would fluctuate drastically in the years following the merger, and specifically notes charges that would impact earnings in the third quarter in particular. The district court properly applied "bespeaks caution" to that statement. Likewise, the forward-looking aspects of the statements concerning the "compelling opportunities" available to Novell, the manner in which Novell was moving rapidly toward a fully integrated sales force" and "leveraging" the "combined knowledge" of the two companies, and the degree to which the company was "quickly reshaping customer expectations" were relatively general, forward-looking projections dealing with subjects that were

dealt with in much greater detail in the cautionary sections of the registration statement and amendments thereto.

Grossman contends that the "bespeaks caution" doctrine should not be applied in the context of this case because: (1) the risk disclosures made by Novell were made in a different document than those in which the alleged misrepresentations occurred; and (2) several of the alleged misstatements referred to historical facts, whereas the "bespeaks caution" doctrine only applies to forward-looking statements.

In dicta, the <u>Worlds of Wonder</u> court stated that the "bespeaks caution" doctrine applies only when "precise cautionary language <u>elsewhere in the document</u> adequately discloses the risks involved." 35 F.3d at 1413 (emphasis added); <u>see also</u> <u>In re Synergen, Inc. Sec. Litig.</u>, 863 F. Supp. 1409, 1415-16 (D. Colo. 1994) (finding "bespeaks caution" inapplicable to current and historical facts and to statements not themselves "coupled" with cautionary language). However, when actually faced with the issue, courts have not required cautionary language to be in the same document as the alleged misstatement or omission. <u>See</u> <u>Philip Morris</u>, 75 F.3d at 811 (cautionary language in Annual Report held to "bespeak caution" with regard to optimistic statements in press releases and newspaper articles); <u>Raab</u>, 4 F.3d at 289 (cautionary language in press release

held to bespeak caution with regard to optimistic statement in contemporaneous Annual Report).[10]

It does not appear that any court has squarely held that the risk disclosures must be in the same document as the alleged misstatement. The cases cited by Grossman instead hold that on the facts of those cases the risk disclosures were inadequate in light of the "total mix" of information then available to the market. See Fecht v. Price Co., 70 F.3d 1078, 1081-82 (9th Cir. 1995) (considering cautionary language in separate document but concluding that the cautionary language was insufficient to render other alleged false predictions non-material), cert. denied, 116 S. Ct. 1422 (1996); Goldman v. Belden, 754 F.2d 1059, 1068 (2d Cir. 1985) (same); Huddleston v. Herman & MacLean, 640 F.2d 534, 543-44 (5th Cir. 1981) (involving a single document -- a prospectus -- but concluding the cautions were inadequate to avoid liability for making predictions that were known to be false at the time they were made), aff'd in part and rev'd in part, 459 U.S. 375 (1983).

---

[10]Indeed, this court has previously held that an investor may not rely on oral misstatements when the risks of an investment are adequately disclosed in an accompanying private placement memorandum. Zobrist v. Coal-X, Inc., 708 F.2d 1511, 1518 (10th Cir. 1983). Novell relies heavily on this case. However, Zobrist is not completely dispositive here because in that case the relevant investment was a security marketed pursuant to Section 4(2) of the Securities Act only to experienced investors. Id. at 1514.

Particularly in a fraud on the market case, the relevant inquiry concerns the total mix of information available to the market at the time of the allegedly fraudulent statements. Basic, 485 U.S. at 246 ("[T]he market price of shares traded on well-developed markets reflects all publicly available information."). This is not to say that it is irrelevant whether the cautionary language was in the same document as the alleged misstatement, because the caution must reasonably be related to the alleged false prediction before the "bespeaks caution" doctrine may be invoked. Remote cautions are less likely effectively to qualify predictions contained in separate statements.

Here, the cautions were contained in formal documents of considerable legal weight -- the registration statement and amendments thereto. The allegedly misleading predictions were contained in less formal press releases and interviews which were all closely proximate in time to the registration statement and they all were obviously directly related to the transactions described in great detail in the registration statement. Under the circumstances presented in this case, in a claim of fraud on the marketplace, we believe the cautionary statements contained in the registration statement may fairly be considered as limiting the forward-looking predictions made in subsequent discussions of the same transaction.

Grossman correctly observes that the "bespeaks caution" doctrine only applies to forward-looking statements. "By definition, the bespeaks caution

doctrine applies only to affirmative, forward-looking statements." In re Stac

Elec. Sec. Litig., 89 F.3d 1399, 1408 (9th Cir. 1996), cert. denied, 117 S. Ct. 1105

(1997). Because several of the allegedly misleading statements referred to then-

present factual conditions, or implied background factual assumptions a

reasonable investor would regard the speaker as believing to be true, the

"bespeaks caution" doctrine would be of no assistance to defendants as to those

statements. For instance, the aspects of the alleged statements relating to

WordPerfect's increased market share, the pace of new product development and

workforce integration, as well as the statement that the merger was "smooth,"

imply assertions concerning then-present factual conditions. However, the

doctrine does assist us in affirming the district court's ruling of non-materiality as

to predictive statements. The remaining statements, which can not be dismissed

as either non-material statements of corporate optimism or non-material because

of the cautions given by Novell in related documents, may be dismissed for a

different reason. As will be discussed below in Section I.B, Grossman has not

alleged that those factual statements were untrue when made, were later shown to

be untrue, or had any impact on Novell's stock price when their falsity was

disclosed.

**B.**

**Failure to Plead Falsity**

After distilling out the immaterial portions of the statements of which Grossman complains, we are left with the following statements: Wise's statement on April 27, 1994 that there were "indications WordPerfect is gaining market share in the Windows word processing software market from less than 20% in 1992 to more than 40% today;" Frankenberg's statement that "we have not slowed down the effort to create new products, we've accelerated it;" Rietveld's statement that the merger was "perhaps the smoothest in recent history;" and Frankenberg's statement that he was "pleased with the accelerating pace of product development since the acquisition was announced in March." These statements cannot be dismissed as mere corporate optimism, because each of these statements could have, and should have had, some basis in objective and verifiable fact. Further, Novell's risk disclosures would not immunize those statements under the "bespeaks caution" doctrine, at least to the extent the statements may be construed as indicating the speakers' beliefs concerning then-present factual conditions. As the Supreme Court noted in Virginia Bankshares, such statements of opinion or belief must rest on "a factual basis that justifies them as accurate, the absence of which renders them misleading." 501 U.S. at 1093.

Our conclusion in that regard is bolstered by the allegations in the complaint that analysts in fact relied upon these statements in upgrading their recommendations regarding Novell stock to "buy." Although, of course, an analyst's response to a statement by the company is not dispositive, it certainly needs to be taken into account in determining whether the statement could, as a matter of law, be determined to be immaterial.

Nonetheless, the dismissal of Grossman's claims based on these statements may be affirmed on the alternative ground that nowhere in the complaint are facts alleged showing that anything about these statements is false. Mere conclusory allegations of falsity are insufficient. Fed. R. Civ. P. 9(b) requires that to state a claim for securities fraud, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc); cf. 15 U.S.C. § 78u-4 (b) (requiring plaintiff to set forth "each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading" in securities fraud cases); Hillson, 42 F.3d at 209 (holding that "[w]here fraudulent projections are alleged, the plaintiffs must identify in the complaint with specificity some reason why the discrepancy

between a company's optimistic projections and its subsequently disappointing results is attributable to fraud").

This requirement ensures that securities claims will not be based on "fraud by hindsight." As the Ninth Circuit recently explained,

> What makes many securities fraud cases more complicated is that often there is no reason to assume that what is true at the moment plaintiff discovers it was also true at the moment of the alleged misrepresentation, and that therefore simply because the alleged misrepresentation conflicts with the current state of facts, the charged statement must have been false. Securities fraud cases often involve some more or less catastrophic event occurring between the time the complained-of statement was made and the time a more sobering truth is revealed (precipitating a drop in stock price). Such events might include, for example, a general decline in the stock market, a decline in other markets affecting the company's product, a shift in consumer demand, the appearance of a new competitor, or a major lawsuit. When such an event has occurred, it is clearly insufficient for plaintiffs to say that the later, sobering revelations make the earlier, cheerier statement a falsehood. In the face of such intervening events, a plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading *when made*.

GlenFed, 42 F.3d at 1548-49 (emphasis in original).

Grossman has not come close to satisfying this requirement. Grossman alleges that the stock price drop on August 22, 1994 was caused by the disclosure of disappointing earnings figures for the third quarter of that year. While the alleged statements may have helped to bolster the share price during the class period, there is no allegation of fact that there was anything materially misleading about these statements, let alone that the statements were material to the drop in

Novell's stock price on August 22, 1994. There has been no allegation that the merger was not smooth, that Novell was not stepping up the pace of new product development, or that WordPerfect was not gaining market share. Nor has there been any allegation that the market ever discovered these assertions to be untrue, or that such discoveries had an adverse impact on Novell's stock price. Accordingly, the district court properly concluded Grossman had not stated a claim based on those statements.

Additionally, we note that Grossman's failure to satisfy the Rule 9(b) requirement of specifically pleading facts showing falsity extends to many of the other statements we have found immaterial as a matter of law. Thus, Rule 9(b) stands as an alternative, and self-sufficient, basis for dismissing many of the non-material allegations found in Grossman's complaint.

## C.

## <u>Duty to Disclose</u>

The district court further correctly held that Novell had no duty to disclose its third quarter earnings forecasts prior to its August 19, 1994, disclosure of actual third quarter earnings, which showed them to be disappointing. <u>Grossman</u>, 909 F. Supp. at 845. Under <u>Basic</u>, "silence, absent a duty to disclose" cannot serve as the basis for liability under Rule 10b-5. 485 U.S. at 239 n.17. However, if a defendant makes a statement on a particular issue, and that statement is false or later turns out

to be false, the defendant may be under a duty to correct any misleading impression left by the statement.  See, e.g., In re Time-Warner Inc. Sec. Litig., 9 F.3d 259, 267 (2d Cir. 1993), cert. denied, 511 U.S. 1017 (1994).  Grossman contends that the statement by defendant Wise that the merger would not dilute "future earnings" gave rise to a duty to disclose actual third quarter earnings forecasts before the actual third quarter earnings themselves were known and disclosed.  The district court concluded Wise's statement was too vague and indefinite to give rise to such a duty to disclose.  Grossman, 909 F. Supp. at 845 n.5.  We agree.

Wise's vague, optimistic statement that "future" earnings would not be diluted was not a "definite positive projection" with respect specifically to third quarter earnings.  See Time-Warner, 9 F.3d at 267 (requiring "definite positive projections" before such a duty will be imposed).  Further, there was no allegation of facts showing that Wise's statement was false when made or that third quarter earnings forecasts by Novell even existed before actual third quarter earnings were released.  Second quarter earnings were, in fact, timely released before the merger was consummated and pro forma income figures were released showing that, had the merger been completed as of the second quarter, pro forma net income would have been reduced by $.09 per share.  Requiring premature quarterly earnings forecasts itself could give rise to potential claims of liability if the forecasts should turn out to be inaccurate.  Here, Novell gave copious warnings regarding the

potential fluctuations in quarterly earnings and regarding the risks to its earnings posed by the proposed merger. There is no challenge that Novell failed timely and accurately to release the actual third quarter earnings figures. We do not believe that Wise's statement about non-dilution of future earnings created any duty on behalf of Novell to make further disclosures beyond those actually made.

Grossman also alleges that Novell made materially misleading omissions regarding its sales and revenues figures, its allegedly excessive research and development costs for new spreadsheet programs, and the fact that it would take a $120 million charge against third quarter earnings due to its acquisition of Quattro Pro. However, these alleged omissions concern matters discussed in great detail in the registration statement, and Grossman has not alleged that there was anything materially misleading about that document. With respect to the Quattro Pro write-off in particular, the Quattro Pro acquisition was a cash purchase of a product from another company, and thus Grossman does not suggest that Novell had any choice but to account for the purchase as a one time charge against income for the quarter in which the transaction occurred. Thus, Novell was under no duty to make further disclosures concerning these subjects.

## II.

## Dismissal Under Fed. R. Civ. P. 9(b) for Failure to Allege Scienter with Particularity

Because we conclude that Grossman failed to allege any material misstatements or omissions, we need not address whether the district court properly dismissed the complaint for failing to sufficiently allege facts showing scienter pursuant to Fed. R. Civ. P. 9(b).

## III.

## Denial of Motion to Amend

The district court dismissed the complaint, finding it would be "futile" to allow amendment. Grossman, 909 F. Supp. at 852. The court provided two bases for this conclusion. First, the court pointed to new (and what it viewed as invalid) scienter theories in Grossman's memorandum in opposition to the motion to dismiss as indicating proper scienter allegations were not forthcoming. Id. Second, the court concluded that its "bespeaks caution" conclusion meant that Grossman could not raise any allegations that would tend to show that investors were "mislead about the potential impact of the WordPerfect merger." Id.

We review the district court's decision to deny leave to amend a complaint for abuse of discretion. T.V. Communications Network v. Turner Network, 964 F.2d 1022, 1028 (10th Cir. 1992). Although Fed. R. Civ. P. 15(a) provides that

leave to amend shall be given freely, the trial court may deny leave to amend where amendment would be futile. Id. (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). While it is an abuse of discretion for the court to deny leave to amend "without expressing any justification . . ., if the denial rests on articulated reasons such as failure to cure deficiencies or futility of amendment the district court's decision shall stand." Id. However, if the stated reasons are incorrect as a matter of law, the district court will be found to have abused its discretion in dismissing the claim with prejudice.

The district court denied leave to amend, in part, because its "conclusion that Novell's SEC registration statements adequately disclosed the potential risks of the WordPerfect merger mean[t] that Grossman could not raise any new allegations sufficient to show that investors were mislead about the potential impact of the WordPerfect merger," and the alleged false statements were generally nonmaterial as corporate optimism. Grossman, 909 F. Supp. at 852. Thus, the amendments did not attempt to add a new misstatement, but rather went to scienter. We agree with the district court, and affirm the denial of leave to amend on that basis.

Grossman alleged that the "fraud" was exposed when Novell announced its third quarter earnings on August 19, 1994. The only alleged misstatement relevant to this earnings announcement was the alleged statement by defendant Wise that future earnings would not be diluted. However, under the "bespeaks caution"

doctrine, this statement was immaterial in light of the disclosures in Novell's registration statements.

Grossman has not argued that the other alleged statements were false when made, that they were ever revealed to be false, or that they had any negative impact on Novell's stock price when they were revealed to be false. Nor has he made any suggestion that he intends to make such allegations. In fact, Grossman provides no indication as to what any amendment to the complaint would allege, aside from an unsupported assertion that "there was sufficient information regarding Novell's stock sales that the District Court believed was relevant but had not been alleged in the complaint." Br. for Aplt. at 45-46. Moreover, Grossman failed to make a formal request to amend, and the lack of a record on such a request deprives us of a clear understanding of exactly what Grossman hoped to cure through amendment. Here, Grossman has failed to show us that any amendment would cure the deficiencies we have identified. Accordingly, we can find no error in the district court's conclusion that any amendment would be futile.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.