Robert J. ANGRES and Irina Axelrod–Angres, Individually And On Behalf Of A Class Of Others Similarly Situated, Plaintiffs,

v.

SMALLWORLDWIDE PLC, Smallworld Systems, Inc., Richard G. Newell, Andrew P. Stafford, Timothy Cadman and Richard T. Green, Defendants.

No. CIV.A.99–K–1254.

United States District Court, D. Colorado.

April 28, 2000.

Robert J. Dyer III, Kip B. Shuman, Dyer Donnelly, Denver, CO, Andrew M. Schatz, Jeffrey S. Nobel, Andrew S. Turret, Schatz & Nobel, P.C., Hartford, CT, for Plaintiffs.

Nancy J. Gegenheimer, Holme Roberts & Owen LLP, Denver, CO, Peter J. Macdonald, S. Tara Miller, Vinita Ferrera, Hale and Dorr LLP, Boston, MA, for Defendants.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

Plaintiffs, Robert J. Angres and Irina Axelrod–Angres, filed this securities fraud class action on behalf of themselves and all purchasers of Smallworld American De-

positary Shares between March 30, 1998 and July 6, 1998 ("the Class Period"). Defendant, Smallworldwide PLC, is a public limited company organized under the laws of England and Wales, with a subsidiary, Smallworld Systems, Inc., ("Smallworld") located in Colorado. Richard G. Newell, Andrew P. Stafford, Timothy Cadman and Richard T. Green (collectively the Individual Defendants) served on Smallworld's Board of Directors.[1]

Plaintiffs sue for violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder. They also sue the Individual Defendants under Section 20 of the Securities Exchange Act of 1934.

Pending is Defendants' Motion to Dismiss the First Amended Class Action Complaint under Rule 12(b)(6) for failure to meet the strict requirements for pleading particularity and scienter established by the Private Securities Litigation Reform Act ("PSLRA") of 1995. 15 U.S.C. § 78u–4(b) (2000).

## I. *Jurisdiction*

This Court has jurisdiction over this action pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa (the "Exchange Act") and 28 U.S.C. §§ 1331 and 1337.

## II. *Allegations in Complaint*

Smallworld produces "Geographic Information Systems" ("GIS"), complex software systems used by utilities to keep track of their physical networks, such as fibers, cables, pipes and the like. (Am. Compl. at 10.) GIS software products enable an organization (through the use of maps, schematic drawings and other spatial information) to understand where their customers and the components of their physical networks (the fibers, cables, wires, joints, pipes, valves, transformers, sub-stations and other equipment) are located. (*Id.*) Plaintiffs' allegations concern two Smallworld products, an upgrade to the original Smallworld GIS called "Smallworld 3" and a new power outage management system called "PowerOn."

Citing Smallworld's Annual Report for fiscal year ended June 30, 1997 and a press release dated February 4, 1998, Plaintiffs assert, before the Class Period, Defendants led the public to believe Smallworld was investing heavily in research and development and, as a result, was on the verge of releasing new products that would enable it to continue to report increased revenues. (Am. Compl. at 10–12.)

They allege, during the Class Period, Defendants intentionally or recklessly made material misrepresentations concerning Smallworld 3 and PowerOn. (*Id.* at 2.) They maintain the Individual Defendants were involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information, were aware or recklessly disregarded the fact that the false and misleading statements were being issued regarding the company, and approved or ratified these statements, in violation of the federal securities laws. (*Id.* at 5.) As a result of these misrepresentations, the price of Smallworld shares was artificially inflated

1. Defendant Richard G. Newell served as the Chairman of Smallworld's Board of Directors and was employed by Smallworld as the Chairman of its Management Team. Defendant Andrew P. Stafford served as a member of Smallworld's Board of Directors and was employed by Smallworld as its Chief Executive Officer and served as the Chief Financial Officer until July of 1998. Defendant Stafford was the signatory to Smallworld's Reports of Foreign Private Issuer for the month of March 1998 and filed the Form 6–K with the Securities and Exchange Commission. Defendant Timothy Cadman served as a member of Smallworld's Board of Directors and was a co-founder, a director and Vice President of Product Development of the company. Defendant Richard T. Green served as a member of Smallworld's Board of Directors and was employed as the Vice President of Corporate Development, Asia. Defendant Green was also a co-founder of Smallworld.

throughout the Class Period. (*Id.*) Plaintiffs claim they and the members of the Class who purchased the shares suffered damages as a direct and proximate result of the misrepresentations by Defendants. (*Id.*)

Plaintiffs contend Defendants misrepresented and/or failed to disclose material facts in Smallworld's press releases, annual reports, quarterly reports and reports of foreign private issuers. (*Id.* at 8.) The Amended Complaint refers to several statements made about Smallworld 3 and PowerOn during the Class Period. First, on March 30, 1998, Smallworld announced the release of an upgrade to Smallworld GIS which the Company called "Smallworld 3." (*Id.* at 12.) According to the press release:

Smallworldwide PLC, the world's leading supplier of geospatial information systems, today announced the release of Smallworld 3, a significantly enhanced upgrade that offers complete interoperability with customers' existing systems and enables enterprise-wide applications and solutions. The product will be officially unveiled at a demonstration held at the AM/FM International Conference in San Jose, California, April 26–29 1998.

(Defs.' Ex. B.)

Similarly, in a March 1998 filing with the Securities and Exchange Commission ("SEC") on Form 6–K (the "March 6–K"), Smallworld reported: "Smallworld *Launches* Smallworld 3. New release *offers* integration and interoperability with other systems," (Am. Compl. at 13)(emphasis added). After announcing the release of Smallworld 3, Defendants announced in April 1998 the release of Smallworld's new power outage management product called "PowerOn." In a company press release dated April 27, 1998, Defendants represented: "GPU, Inc., a registered holding company for multiple utility subsidiaries, ha[d] selected Smallworld's technology for

its enterprise-wide solution." (Defs.' Ex. D.) In particular,

GPU was the third customer out of six to select Smallworld PowerOn, the new, comprehensive outage and distribution management system designed to assist in the management of planned and unplanned outages. PowerOn, a scalable, full-function product, provides seamless integration with Smallworld's core product and uses Oracle Corporation's Universal Data Server as a repository for dynamic data, providing a robust, high performance, open database environment.

(*Id.*)

Next, Plaintiffs claim Smallworld's May 6, 1998 press release reporting on the results of the third fiscal quarter ending March 31, 1998 again represented the Smallworld 3 and PowerOn products had been "developed" and were "ready for shipment." (Am. Compl. at 14.) In this press release, Defendant Newell, Chairman of Smallworld's Board of Directors, stated:

[T]his most-recent period also witnessed the development of very promising new products such as the highly interoperable Smallworld 3 upgrade of our core technology and PowerOn, an innovative power outage management application. We hope to report on the successful marketing of these technologies in the months ahead.

(Defs.' Ex. E.)

Plaintiffs claim the March 30, March 6–K, April 27 and May 6 releases "constituted representations that Smallworld and PowerOn were fully tested and fully operational products, and were ready for marketing and shipment to customers and potential customers." (Am. Compl. at 15.) They maintain Defendants' representations concerning PowerOn in the April 27 and May 6 releases were representations

of present fact which were materially false and misleading when made, because Defendants did not disclose that PowerOn and Smallworld 3 were not yet fully developed, fully tested, nor ready for shipment as a fully operational product to customers. In particular, Plaintiffs point to a July 6, 1998 release stating:

> Smallworldwide plc ... [sic] said today that, based on current information, it expects results for the fourth quarter of fiscal 1998, ended June 30, 1998, to be below expectations. The downward revision is due to a short-term delay in shipment of PowerOn, a new power outage management application originally scheduled to begin shipping at the end of June. Shipment was postponed to allow for more engineering development and comprehensive final-round testing than previously anticipated, in order to ensure the debut version's successful market introduction. PowerOn is now scheduled to start shipping at the end of July, early in the Company's first quarter of fiscal 1999.

(*Id.* at 15–16.)

Plaintiffs also cite an August 19, 1998 press release, quoting Mr. Newell as stating: "The Company record-level performance did not come without its disappointments; most notably our failure to ship PowerOn, a new outage management application, on schedule in the final week of the fourth quarter." (Defs' Ex. F.) Plaintiffs concede, however, Smallworld did ship PowerOn in July 1998. (Am. Compl. at 18.)

Plaintiffs allege Defendants acted in reckless disregard of the truth of these representations because the representations presented a danger of misleading buyers of Smallworld shares into believing PowerOn and Smallworld 3 were ready for shipment at the time the representations were made, a danger that was either known to Defendants or was so obvious that Defendants must have been aware of it, in light of the facts known to them about the status of the products. (*Id.* at 18–19.) For example, Plaintiffs claim Defendants represented, in April and May 1998, PowerOn was fully developed and ready for marketing and shipment and Smallworld had at least six PowerOn customers ("to whom immediate shipment would be inferred"), yet Defendants knew PowerOn would not be shipped—at the earliest—until the last week of June 1998 and testing for PowerOn had not yet been completed. (Am. Compl. at 18.)

Moreover, the Individual Defendants knew of these problems given the importance of PowerOn to Smallworld's business and by virtue of Defendants' high level positions within Smallworld. (*Id.*) Likewise, Plaintiffs claim Defendants knew of Smallworld's problems from Smallworld's own reports and reports from customers and prospective customers. (*Id.*)

Plaintiffs also claim Defendants materially misrepresented future expectations of revenues for PowerOn and Smallworld 3. Plaintiffs refer to Smallworld's Annual Report for the Fiscal Year Ended June 30, 1997 filed with the SEC, stating Defendants "employed a revenue recognition policy which recognized revenue on shipment to, *and acceptance by,* the customer," (*Id.* at 19). Plaintiffs claim acceptance was a critical condition for revenue recognition of PowerOn, because PowerOn was a new product, and customers could not be deemed to have accepted the product upon shipment. (*Id.*) Plaintiffs maintain these representations were false and misleading because Smallworld could not have properly recognized revenues from PowerOn in the fourth quarter of Fiscal 1998 until each customer tested PowerOn, which Defendants knew "would require at least several weeks or 1–2 months to ensure" the product properly functioned. (*Id.*)

Plaintiffs allege these material nondisclosures and misrepresentations caused

and maintained an artificially inflated price of Smallworld shares. (*Id.* at 22.) The closing price on the business day before the commencement of the Class Period was $17.125, and during the Class Period, the price of the shares increased as a direct result of Defendants' misrepresentations, increasing to a high of $36.50 on May 13, 1998, and decreasing to $5⅝ on October 5, 1998. (*Id.* at 23.)

In addition to the allegation regarding Defendants' knowledge, Plaintiffs assert scienter can also be inferred from the fact that Defendants Cadman and Green sold nearly 50% and 40% of their Smallworld shares respectively, shortly after the misrepresentations were made and near the all-time high price for Smallworld shares. (*Id.* at 24–25.)

### III. *Applicable Standard for Motion to Dismiss*

Defendants assert Plaintiffs allegations do not meet the stringent pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") 15 U.S.C. § 78u–4. In particular, Defendants argue Plaintiffs do not explain why the statements actually made about Smallworld 3 and PowerOn were fraudulent and fail to allege facts that give rise to a strong inference of scienter. They maintain Plaintiffs cannot, therefore, succeed on their secondary liability claim against the Individual Defendants.

A Rule 12(b)(6) dismissal is appropriate only when it appears plaintiff can prove no set of facts in support of the claims that would entitle it to relief. *Grossman v. Novell Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997). In considering a Rule 12(b)(6) motion to dismiss, the court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to plaintiff. *Id.* Although fact-specific inquiries common to securities cases generally preclude dismissal, courts will nonetheless grant a 12(b)(6) motion if the alleged misrepresentations or omissions are immaterial or not pleaded in accordance with Fed.R.Civ.P. 9(b) or the PSLRA. *Queen Uno Ltd. Partnership v. Coeur D'Alene Mines Corporation,* 2 F.Supp.2d 1345, 1352 (D.Colo.1998)(Brimmer, J.)(applying PSLRA and citing *Grossman* ). Dismissal is not appropriate, however, merely because a court disbelieves a complaint's factual allegations. *Id.* at 1351.

Plaintiffs' claims sound under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5 (2000) as modified by the PSLRA. Section 10b makes it unlawful for any person "to use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." Rule 10b–5 declares it unlawful for a person "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5 (2000). In this circuit, a Rule 10b–5 claim is sufficient to state a claim if plaintiff alleges: (1) a misleading statement or omission of a material fact; (2) made in connection with the purchase or sale of securities; (3) with the intent to defraud or recklessness; (4) reliance; and (5) damages. *Grossman,* at 1118 (citing *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 986 (10th Cir.1992).)

A 10b–5 claim must be pled in accordance with Federal Rule of Civil Procedure 9(b), which provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b).

In 1995, Congress amended the Securities Exchange Act of 1934 by enacting the PSLRA, designed to deter the perceived rise in abusive private securities fraud suits. *Id.* It substantially modified, among other things, the standard for pleading securities fraud claims. *Id.* Now, not only must the plaintiff plead with particularity facts constituting fraud (by specifying each statement alleged to have been misleading and the reason or reasons why the statement is misleading), the plaintiff must also plead with particularity facts permitting a strong inference that the respective defendant acted with the requisite state of mind. 15 U.S.C. § 78u–4(b).

## IV.  *Merits*

### A.  *Particularity of Material False and Misleading Statements or Omissions*

■ A plaintiff meets the particularity requirement of the PSLRA by specifying each statement alleged to have been misleading and the reason or reasons why the statement is misleading. 15 U.S.C. § 78u–4(b). If an allegation regarding the statement or omission is made on information and belief, the complaint must state with particularity all facts on which that belief is based. *Id.*

Plaintiffs allege the following statements of Defendants were misleading: Smallworldwide "announced *the release* of Smallworld 3," (Am. Compl.' at 12); "Smallworld 3 *propels* Smallworld," (*id.*); Smallworld 3 *"provides* the technology that *enables* customers to move beyond the confines of traditional geographic information systems," (*id.*); "Smallworld *Launches* Smallworld 3," (*id.* at 13); "New release *offers* full integration . . . ," (*id.*); "PowerOn, a scalable, full-function product *provides* seamless integration . . . ," (*id.* at 13); and Smallworld "witnessed *the development* of very promising products," (*id.*). Plaintiffs allege these representations

about Smallworld and PowerOn were false or misleading when made because Defendants did not disclose that Smallworld 3 and PowerOn were not fully developed, fully tested, nor ready for shipment as a fully operational product to customers.

Defendants contend Plaintiffs do not satisfy the requirements of Rule 9(b) because they do not explain why the statements actually made about Smallworld 3 and PowerOn were fraudulent. I find however, Plaintiffs do explain why the statements were fraudulent. Plaintiffs allege Defendants knew Smallworld 3 and PowerOn were not ready for shipment, yet misstated the current development and readiness for shipment of the products. *See Fugman v. Aprogenex, Inc.,* 961 F.Supp. 1190, 1195–96 (N.D.Ill.1997) (oral statements of defendant company that Gensite system would be commercially viable, that problems had been fixed and that the system would be introduced into market in short order was a present misstatement of fact based on defendant company's later disclosure that it had never been able to develop a component of the system and had never been close to marketing the system).

Plaintiffs also allege Defendants' statement on April 27 that "GPU was the third customer out of six to select Smallworld PowerOn," (Am. Compl. at 14), led a reasonable investor to believe PowerOn "had been developed and w[as] therefore ready for shipment and ready for marketing to potential customers," (*id.*). Plaintiffs maintain this statement was misleading because the statement led a reasonable investor to believe PowerOn was fully tested, operational and ready for shipment, and, therefore, expected to be able to recognize revenue attributable to PowerOn from those six customers during the fourth quarter of fiscal 1998. (*Id.* at 20.)

In their motion to dismiss, Defendants argue the April 27 press release says

nothing about any revenues attributable to PowerOn, the level of product testing, or any anticipated shipment date. Defendants state Smallworld's revenue recognition policy, as described in its Annual Reports, provided revenues from software license fees were recognized *upon shipment to,* and acceptance by, the customer. (Mot. at 8.) They therefore maintain these statements could not be construed as tantamount to immediate revenue recognition. (*Id.*) Moreover, Defendants claim even if somebody jumped to the unreasonable assumption that the selection of the product by a customer would result in immediate revenues, that person would have been corrected quickly by Smallworldwide's announcement of May 6, 1998, stating PowerOn was a "promising new product" that Smallworld *"hope[d]* to successful[ly] market[ ]." (Motion at 8.)

Rule 9(b) requires a plaintiff to set forth each statement that was false or misleading and explanation as to why the disputed statement was untrue or misleading when made. *Grossman v. Novell, Inc.,* 120 F.3d at 1123. Plaintiffs have specified Defendant's statements as misleading and given the reason for this as being that a reasonable investor could have believed PowerOn and Smallworld 3 were fully developed and ready for shipment. Rule 9(b) requires the pleadings give notice to the defendants of the fraudulent statements for which they are allegedly responsible. *Schwartz v. Celestial Seasonings, Inc.,* 124 F.3d 1246, 1253 (10th Cir.1997). Plaintiffs have done so. A dispute over how reasonable investors understand a term contained within defendants' statements is a factual inquiry which cannot be determined on a motion to dismiss. *Walsh v. Chittenden Corp.,* 798 F.Supp. 1043, 1049 (D.Vt.1992). Drawing all inferences in favor of Plaintiffs, I find the allegations particular enough to withstand the motion to dismiss.

### B. *Scienter Requirement*

■ Defendants contend the Amended Complaint fails to allege facts that give rise to a strong inference of scienter. In addition to the PSLRA requiring a plaintiff to specify false and misleading statements, the Act requires the plaintiff to "state with particular facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4. The Act does not specify what state of mind is required. The Tenth Circuit requires "conscious recklessness" to satisfy Rule 10b–5's scienter requirement. *Queen Uno Ltd. Partnership,* 2 F.Supp.2d 1345 at 1355. "Conscious recklessness" is defined as conduct that is "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or so obvious that the actor must have been aware of it." *Id.*

■ Congress intended the courts to determine whether a plaintiff has pled a "strong inference" of fraudulent intent by examining the particular allegations of each case. *Id.* at 1359. A plaintiff can satisfy this burden by pleading motive and opportunity, conscious misbehavior, recklessness or by impressing upon the court a novel legal theory. *Id.* However, Congress's unequivocal intention, as noted in the legislative history, precludes a per se rule that allegations of motive and opportunity necessarily raise a strong inference that the defendants acted with the required state of mind. *Id.* Rather, in those cases where motive and opportunity allegations do not alone create a strong inference of scienter, the allegations will nonetheless be relevant in determining whether the totality of allegations permits a strong inference of fraud. *Id.*

■ Plaintiffs contend the Complaint adequately alleges a strong inference of fraud by alleging the following facts which infer the misleading statements were made knowingly or recklessly:

1) Defendants have acknowledged they *knew* the necessary testing of PowerOn

and Smallworld 3 had not been completed while at the same time representing PowerOn and Smallworld 3 were fully operational products and ready for shipment to customers. Defendants *knew* of PowerOn' significant problems from Smallworld's own testing and from reports to Smallworld by customers and prospective customers. (*Id.* at 15–17.)

2) It *can be strongly inferred* that Defendants (the senior officers and directors of Smallworld) knew of those problems given the importance of PowerOn to Smallworld's business and by virtue of Defendants' high level positions within Smallworld. (*Id.* at 17.)

3) Defendants Cadman and Green had the motive to intentionally or recklessly mislead the investing public in order to allow for profitable insider sales to generate insider trading profits during the Class Period. The insider selling by Defendants Cadman and Green *strongly infers their scienter,* as such sales were *unusual in timing and in the number of shares sold.* Defendant Cadman sold nearly 50% of his Smallworld shares on May 14, 1998, and Defendant Green sold nearly 40% of his Smallworld shares on May 18, 1998, shortly after the misrepresentations were made and near the all-time high price for Smallworld shares. (*Id.* at 24–25.)

Defendants argue Plaintiffs ignore the fact that Defendants at no time said the products *were* "fully tested", "fully operational" and "ready for shipment." (*Id.* at 13.) Nor did Defendants make any projection about when the products would be shipped or would generate revenue. (*Id.* at 13–15.) Even if they had, Defendants assert, the failure of such a prediction does not give rise to an inference of scienter, far less a strong inference of scienter. (*Id.*)

Plaintiff's first allegation supporting scienter is that Defendants knew of PowerOn's and Smallworld 3's problems, while at the same time, representing the prod-

ucts were fully tested, fully operational and ready for shipment. Plaintiffs must plead sufficient facts to show Defendants acted with the requisite state of mind: i.e. reckless behavior that is an "extreme departure from the standards of ordinary care." *Queen Uno Ltd. Partnership,* 2 F.Supp.2d 1345 at 1355. Plaintiffs allege Defendants knew about PowerOn's problems from inside testing and customer complaints. I find this allegation supports a finding of a "strong inference" of an "extreme departure of ordinary care."

Defendants argue Plaintiffs' allegation of scienter is undermined by the fact PowerOn was shipped to customers in July 1998, only three months after the April 27, 1998 press release, the delay in shipment does not permit or suggest that a strong inference of fraud should be drawn. "Where . . . a product is understood to be in development, plaintiff may not assert merely that, because the project did not come out when projected, plans for an earlier release were false." *Borow v. nVIEW Corp.,* 829 F.Supp. 828, 834 (E.D.Va.1993). They assert this is especially true where as here, the April 27, 1998 statement is ambivalent as to Defendants' precise intent to ship PowerOn. I find, however, that Plaintiffs have sufficiently alleged knowledge on the part of Defendants that the products were not ready for shipment, contrary to Defendants' representations. Any further issues of scienter involve determinations of questions of fact.

Plaintiffs also assert Defendants "must have known" of the misleading nature of the statements because of their high level positions and the importance of PowerOn to the Company. The parties cite authorities for and against this proposition. I have already found that Plaintiffs' allegations regarding Defendants' conscious knowledge of the misrepresentations satisfy the scienter requirement. Drawing all inferences in favor of Plaintiffs, the allegations also suffice to create a strong infer-

ence that as key officers of Smallworld, the Individual Defendants had such knowledge. *See In re Aetna Inc. Securities Litigation,* 34 F.Supp.2d 935, 953–54 (E.D.Pa.1999) (strong inference that defendants/officers had conscious knowledge of misrepresentations and omissions concerning financial impact and success of integration with acquired company due to their high level executive positions and the significance and importance of the acquisition).

Finally, Plaintiffs' allege scienter can be inferred because Defendant Cadman sold 50% of his Smallworld shares on May 14, 1998, and Defendant Green sold 40% of his Smallworld shares on May 18, 1998, "after the alleged misrepresentations were made." (Am. Compl. at 24–25.) The charge that corporate officers engaged in insider sales at unusual or suspicious levels is probative of motive. *Stevelman v. Alias Research Inc.,* 174 F.3d 79, 85 (2nd Cir. 1999). The mere pleading of insider trading, however, without regard to either context or the strength of the inferences to be drawn is not enough. *Greebel v. FTP Software,* 194 F.3d 185, 197 (1st Cir.1999). At a minimum, the trading must be in a context where defendants have incentives to withhold material, non-public information, and it must be unusual, well beyond the normal patterns of trading by those defendants. *Id.* Taken in the context of Defendants' alleged knowledge that the products were not ready for shipment, Plaintiffs have plead with particularity why the sale of stock on May 14 and May 18 was suspicious, saying, "the insider selling by Defendants Cadman and Green strongly infers their scienter, as such sales were unusual in the timing of the sales and in the number of shares sold." (Am. Compl. at 24.)

I find the allegations set forth in the Complaint give rise to *an inference* the individual defendants had a motive and the opportunity to commit securities fraud and

are relevant to recklessness. Accordingly, the "allegations in their entirety" are sufficient to withstand a motion to dismiss. *Queen Uno,* 2 F.Supp.2d at 1359.

### V. *Conclusion*

I conclude Plaintiffs' allegations are sufficient to state a claim for violation of Sections 10(b) and 20 of the Securities Exchange Act and Rule 10b–5. Accordingly,

IT IS ORDERED THAT Defendants' Motion to Dismiss the First Amended Class Action Complaint is DENIED.