### In re RHYTHMS SECURITIES LITIGATION

[This Order applies to all actions]

Nos. 02–K–35, 02–K–46, 02–K–78, 02–K–137, 02–K–145, 02–K–146, 02–K–152, 02–K–161, 02–K–168, 02–K–304, 02–K–351.

United States District Court, D. Colorado.

Jan. 29, 2004.

Jeffrey Allen Berens, John Michael Martin, Robert J. Dyer, III, Dyer & Shuman, LLP, Gerald L. Bader, Jr., Bader & Associates, P.C., Denver, CO, Lori G. Feldman, Tamara J. Driscoll, Milberg, Weiss, Bershad, Hynes & Lerach, Seattle, WA, for Plaintiffs.

Brian E. Pastuszenski, Alexis L. Shapiro, Testa, Hurwitz & Thibeault, Boston, MA, Jeffrey A. Chase, Jacobs, Chase, Frick, Kleinkopf Kelley LLC, Denver, CO, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

KANE, District Judge.

These consolidated securities fraud class actions came before me on Wednesday, January 14, 2004, for oral argument on Defendants' Motion to Dismiss the Consolidated Class Action Complaint. I have reviewed the supplemental filings of the parties on issues related to pleading market efficiency. Having read into the record at Wednesday's hearing my statement of the nature of the action, the relevant allegations of the Complaint and the legal standard to be applied,[1] I will not repeat

---

1. With respect to the applicable legal standard on Defendants' Rule 12(b)(6) Motion un-

them here. The following constitutes my ruling and the reasons employed in support thereof.

1. *Brown Has Standing to Assert Claims on Behalf of the Class Throughout the Class Period.*

█ It is undisputed that Brown's only purchase of Rhythms stock during the class period occurred on March 13, 2000. Defendants argue Brown lacks individual standing to assert any claims based on statements made after March 13, 2000, because "any later statements 'could not possibly have inflated his purchase price.'" (Defs.' Mem. Law in Supp. Mot. Dismiss at 38.) Defendants further contend that Brown lacks standing to assert any claims against Defendant Braukman because Braukman was not employed by Rhythms until April 7, 2000, after the class period concluded.

Defendants rely on *Gross v. Summa Four, Inc.*, 93 F.3d 987, 993 (1st Cir.1996) as authority for the proposition that a purported class representative in a securities litigation cannot maintain an action on behalf of the class to redress those injuries for which he lacks individual standing. According to Defendants, this limits Brown as having standing only to assert claims on behalf of the Class based on Rhythms' January 6, 2000 and February 29, 2000 press releases.

Brown counters that as both a purchaser and a seller of Rhythms stock, his standing is not limited by his March 13, 2000 purchase date. Brown relies on *In re Intelcom Group, Inc. Sec. Litig.*, 169 F.R.D. 142, 151 (D.Colo.1996) to argue timing differences among class members' securities purchases do not destroy typicality and thus early class period purchasers can represent subsequent purchasers.

The Tenth Circuit has ruled that a dissimilarity of misrepresentations upon which individual members of a putative class relied does not prohibit a class action when the misrepresentations established a common course of conduct by defendants. *Esplin v. Hirschi*, 402 F.2d 94, 100–101 (10th Cir.1968). The Sixth Circuit has also ruled that once a potential class representative establishes his individual standing to sue a defendant, there is no additional standing requirement related to his suitability to represent the individual claims of the putative class of plaintiffs. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir.1998).

In the instant case, Brown has individual standing to assert claims based upon some of the alleged misrepresentations made by Defendants. Brown asserts all the misrepresentations made by Defendants were part of a common course of conduct designed to inflate the price of Rhythms common stock and to allow the Company to meet its line count quotas and create the impression of continued growth and security. (Cons.Class Action Compl. ¶¶ 94, 95.) Under the applicable authority, I find

der the PSLRA, I augment my statements to incorporate explicitly the Tenth Circuit's explication in *Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1183 (10th Cir.2003). Specifically, and with awareness of the tension between the strict pleading requirements of the PSLRA and the "customary latitude" accorded plaintiffs under Rule 12(b)(6), a court's function on a Rule 12(b)(6) motion remains to "'[avoid] weigh[ing] potential evidence the parties might present at trial, [and] to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Id.* (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir.1999)). Accordingly, a 12(b)(6) motion "should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir.1997)(internal quotation omitted)).

plaintiffs' reliance on misrepresentations from different time periods does not undermine Brown's ability to represent the entire class. *Intelcom Group, Inc.* is directly on point and supports allowing Brown, an early class period purchaser of Rhythms securities, to represent subsequent purchasers in this class action. The contention that Brown lacks standing to assert claims on behalf of all Class members against all Defendants for all of the allegedly false statements made during the Class Period is rejected.

2. *Plaintiffs Have Satisfied PSLRA Requirements that the Fraudulent Nature of Defendants' Statements of Material Fact be Pleaded with Particularity.*

Essentially codifying Rule 9(b)'s particularity requirement for pleading fraud as applied in this circuit pre-PSLRA, *see Queen Uno Ltd. Partnership v. Coeur D'Alene Mines Corp.*, 2 F.Supp.2d 1345, 1353(D.Colo.1998)(citing *Grossman v. Novell, Inc.* 120 F.3d 1112, 1124 (10th Cir. 1997)),[2] the PSLRA provides that a securities fraud class action plaintiff "specify each statement [or omission] alleged to have been misleading [and] the reason or reasons why the statement [or omission] is misleading." 15 U.S.C. § 78u–4(b)(1). For allegations made on information and

belief, the PSLRA explicitly requires plaintiff to "state with particularity all facts upon which that belief is formed." *Id., discussed in Adams v. Kinder–Morgan, Inc.*, 340 F.3d 1083, 1094–97 (10th Cir.2003).

 In *Adams*, the Tenth Circuit made several important rulings related to the standard for allegations based on information and belief under the PSLRA, which apply to various aspects of Plaintiffs' Complaint in this case:

(1) Allegations based on the investigation of counsel are the equivalent of allegations based on information and belief, 340 F.3d at 1097–98 (adopting Fifth Circuit's position as stated in *In re Theragenics Corp. Sec. Litig.*, 105 F.Supp.2d 1342, 1351 (N.D.Ga.2000) and abrogating Judge Brimmer's contrary conclusion on this point in *Queen Uno*, 2 F.Supp.2d at 1353–54);

(2) The requirement that "all facts" on which a belief is formed be stated with particularity does not mean that plaintiffs must plead with particularity " 'every single fact upon which their beliefs concerning false or misleading statements are based.' " *Adams* at 1098–99 (quoting *Novak v. Kasaks*, 216 F.3d 300, 313–14 (2d Cir.2000)). Rather, plaintiffs

---

**2.** In my view, the assertion in *Adams* that the PSLRA increased a securities class action plaintiff's burden under Rule 9(b) in pleading the *circumstances* of fraud is inaccurate and unnecessarily risks invalidating a line of pre-PSLRA decisions that remain accurate and viable interpretations of the standard in the post-PSLRA era. The pre-PSLRA standard for pleading securities fraud in this circuit, consistent with the requirement in Section 78u–4(b)(1), is that a plaintiff must " 'set forth what is false or misleading about a statement and why it is false.' " *Grossman*, 120 F.3d at 1124 (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994))(en banc). In *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986–87 (10th Cir.1992), the

Tenth Circuit explained how "courts have strictly enforced Rule 9(b) in claims under the securities law, requiring detailed statements of the specific conduct which allegedly violated the statutes in question," adopting the standards applied by the Seventh and Second Circuits that ultimately formed the basis for the language adopted by Congress in enacting Section 78u–4(b)(1). In sum, the PSLRA codified the interpretation this and other circuit courts of appeal had given Rule 9(b) with respect to pleading the first element of a claim under the securities laws (i.e., the falsity of representations or omissions alleged to have been misleading). It did not "heighten" it, and cases like *Farlow* and *Grossman* remain instructive in post-PSLRA cases.

" 'need only plead with particularity *sufficient* facts to support those beliefs.' " *Id.* at 1099 (emphasis original). A "common-sense, case-by-case approach" will edify any determination of whether the facts alleged are "sufficient" under this standard, *id.* at 1101–02, requiring courts to determine whether, "taken as a whole," the facts alleged support a "reasonable belief that the defendant's statements identified by the plaintiff were false or misleading." *Id.* at 1099 (identifying six specific factors to be considered, including level of detail, coherence and plausibility of facts considered together, whether sources of facts are disclosed and "any other indicia of how strongly the facts support the conclusion that a reasonable person would believe defendant's statements were misleading").

(3) While plaintiffs may "significantly strengthen their pleading" by identifying the sources—documentary or personal—for the facts alleged in their complaint, they are not required to do so in order for those facts to be considered in the sufficiency determination. *Adams,* 340 F.3d at 1101–03 (declining to adopt the Second Circuit's position on this point in *Novak* ).

In sum, in this circuit, courts are to apply a common-sense, case-by-case approach in determining whether a plaintiff has alleged securities fraud with the particularity required by § 78u–4(b)(1) without adding a per se judicial requirement that the source of facts must always be alleged to support substantive allegations of fraud in an information and belief complaint. In deciding whether the factual allegations support a reasonable belief that fraud occurred, courts should evaluate the facts alleged as a whole, evaluating the level of detail, number, and coherence and plausibility of the allegations; whether the allegations are specific enough to be verified or refuted by a defendant without requiring the complaint to disclose how the plaintiff learned of such facts or experts to prove such facts at trial; whether the sources of the facts are disclosed and the reliability of those sources; and any other factors that might affect how strongly the facts alleged support a reasonable belief that the defendant's statements were false or misleading.

*Adams,* 340 F.3d at 1102–03 (summarizing the six factors to be considered in the evaluation of fraud allegations' overall sufficiency under Section 78u–4(b)(1)).

■ Having reviewed the 45–page Consolidated Class Action Complaint in this case under these standards, I conclude they support a reasonable belief that Rhythms' reported subscriber line count and attendant growth and revenue representations were materially and significantly overstated and otherwise false and misleading.

The Consolidated Class Action Complaint in this action includes detailed allegations regarding the false and misleading nature of Defendants' group-published statements regarding Rhythms' subscriber line count and financial situation throughout the Class Period. Brown describes specific press releases issued during the Class Period that contain allegedly false statements regarding the growth of the Company's subscriber line count and allegedly overstated revenues. In accordance with Tenth Circuit pleading requirements, Brown specifies the time, place and content of each alleged misrepresentation. Because all Defendants were corporate officers during the Class Period, all Defendants are presumed to have taken part in creating and disseminating the press releases pursuant to the "group-published documents" doctrine. *See In re Ribozyme Pharmaceuticals, Inc. Sec. Litig.,* 119 F.Supp.2d 1156, 1165 (D.Colo.2000)(citing

*Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1254 (10th Cir.1997) and recognizing the continued viability of "group-published documents" doctrine post-PSLRA).

The Consolidated Complaint also identifies specific SEC forms filed by Rhythms throughout the Class Period including allegedly false statements regarding Rhythms' line counts and revenues. Although the "group-published documents" exception also applies to the SEC forms, Brown does in fact allege that each of the Defendants has signed at least one of the SEC filings that included false information. Brown specifically pleads the date each SEC form was filed, its content and the name of each Defendant who signed it.

Defendants nevertheless assert the inadequacy of the Consolidated Complaint, arguing Brown failed to allege the market ever discovered Defendants' alleged misstatements to be untrue. Defendants misconstrue *Grossman* when they contend that where the market never discovers an alleged false statement to be untrue, allegations of falsity must fail as a matter of law. 120 F.3d at 1124. At most *Grossman* suggests, in dictum, that an allegation that the market discovers a statement to be untrue may be one way of pleading with particularity the falsity of such a statement. *See id.* It does not require it. In this case, Brown met the burden of specifying each statement alleged to be untrue, so *Grossman*'s alternative method of pleading with particularity is unnecessary.

Defendants further argue that Brown fails to satisfy the requirements of Rule 9(b) or the PSLRA because he fails to allege how or why the statements made by Rhythms regarding subscriber line counts and Company revenues were false. In fact, Brown alleges quite explicitly why the statements were false, identifying a series of instances where Rhythms employees classified uninstalled, proble-matic and cancelled DSL lines as successfully installed, thus improperly adding these lines to Rhythms subscriber line count. (Cons.Class Action Compl. ¶ 41.) Specifically, Brown alleges the following instances of line count manipulations giving rise to an inference regarding the falsity of the information given: a former internal application support employee witnessed other employees in his group changing the classification of DSL lines from uninstalled to installed pursuant to orders from management (*Id.* ¶ 41, bullet 5); according to a former "five star" account representative and a former Operations Reporting Group employee, Rhythms withheld line disconnect information on as many as 7,000 lines until after inflated numbers were publicly reported for a given quarter (*Id.* ¶ 41, bullets 4, 7); according to a former technical support representative, employees were directed to alter Company records to reflect in-process and failed installation records as successfully installed (*Id.* ¶ 41, bullet 6); a Rhythms Account Manager altered between 1,000 and 3,000 lines at the end of every quarter in 1999 and 2000 (*Id.* ¶ 42). Brown asserts these overstated line counts were reported to Wall Street. (*Id.* ¶ 41, bullets 5,7,8.) According to a former Rhythms supervisor, the publicly reported subscriber line count was inflated by at least fourteen percent for the fourth quarter of 1999 and by more than twenty-five percent for the fourth quarter of 2000. (*Id.* ¶ 42.)

Defendants also argue that Brown's allegations lack specificity because they are based on unnamed sources who merely repeat vague rumors. (Defs.' Mem. Law Supp. Mot. Dismiss at 35.) Brown, however, asserts that several employees either witnessed improper line count manipulations or took part in such manipulations. Moreover, Defendants cite *Queen Uno*, 2 F.Supp.2d at 1354 n. 4, for the proposition that securities class action plaintiffs must

identify the names of informants upon whom they rely in their complaints. (Defs.' Mem. Law Supp. Mot. Dismiss at 36.) As set forth above, the Tenth Circuit in *Adams* abrogated *Queen Uno* in this regard, expressly rejecting the contention that the PSLRA imposes a per se rule requiring the identification of specific sources for information alleged.

In this regard, however, I find Brown's descriptions of his sources in the Consolidated Complaint adequate even under the standard rejected by the Tenth Circuit to allow the facts attributed to them to be considered for pleading purposes. *See Novak* at 314 (information attributed to confidential sources may be considered if those sources are "described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged"). Here, the information attributed to sources described as an "operations consultant," an "employee who worked in the Operations Reporting Group," an "internal application support employee," a "technical support representative," a "'five star' account representative," and an "Account Manager" (Compl.¶ 41) are sufficiently specific to support the probability that the employees possessed the information alleged. Under *Adams*, these descriptions "significantly strengthen" Plaintiffs' pleading. *See Adams* at 1102.

Finally, Defendants contend the Class Action Complaint is defective because Brown's allegations demonstrating the materiality of the alleged misrepresentations lack the particularity required under the PSLRA. (Defs.' Mem. Law Supp. Mot. Dismiss at 37.) I disagree.

■ An alleged misrepresentation is material only if a reasonable investor would consider it important in determining whether to buy or sell stock. *Grossman,* 120 F.3d at 1119. Stated otherwise, it must "significantly alter[ ] the 'total mix' of

information" available to the market. *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Here, Brown alleges Defendants overstated Rhythms' subscriber line count by more than twenty-five percent for a particular quarter (Compl.¶ 42) and that Wall Street analysts and investors primarily relied on subscriber line count increases to gauge Rhythms' business and growth prospects. (*Id.* ¶ 36.) If Rhythms had failed to report a healthy, growing line count, its stock price and its ability to obtain financing would have been significantly diminished. (*Id.* ¶ 3.) I conclude Brown has pleaded sufficient facts to establish the materiality of Rhythms' alleged overstatements of its subscriber line count. The statements were a primary component of the "total mix" of information available to the market regarding Rhythms' business performance and a reasonable investor would consider the Company's line count important in determining whether to buy or sell Rhythms stock.

Viewing Brown's allegations as a whole and evaluating their level of detail, the coherence and plausibility of facts alleged when considered together, the description of the sources alleged to have provided some of the information alleged, I conclude they support a "reasonable belief that the defendant's statements identified by the plaintiff were false or misleading." *Adams* at 1099. The allegations are specific enough to be verified or refuted by the Defendants, providing them with sufficient notice of what it is alleged they did or said that was false or misleading, thus satisfying the concerns articulated by Congress in enacting the PSLRA.

3. *The Totality of Brown's Allegations Create a Strong Inference that Defendants Acted With the Requisite Fraudulent Intent*

■ Having concluded the class action Complaint satisfies the pleading require-

ments of § 78u–4(b)(1), I turn to whether it satisfies the PSLRA's heightened standard in § 78u–4(b)(2) for pleading the element of scienter. *Id.* (to plead element of scienter, plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"). The Tenth Circuit Court of Appeals discussed this standard extensively in *City of Philadelphia v. Fleming*, 264 F.3d 1245, 1258–62 (10th Cir. 2001), affirming the continued viability of recklessness as a pleading standard for scienter and agreeing with five other circuit courts that a plaintiff may adequately plead scienter under the PSLRA "by setting forth facts raising a 'strong inference' of intentional *or* reckless misconduct." *Id.* at 1259 (emphasis original). Recklessness remains defined as " 'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.' " *Id.* at 1258, 1260 (quoting *Anixter v. Home–Stake Prod. Co.*, 77 F.3d 1215, 1232 (10th Cir.1996)).

To determine whether a plaintiff has pleaded a "strong inference" of scienter, a court must examine the totality of the allegations of each case. *Fleming* at 1258–59. Viewing the alleged facts in the light most favorable to Brown, the Consolidated Class Action Complaint raises a "strong inference" that, at a minimum, the named Defendants were consciously reckless in making representations to the public that grossly inflated Rhythms' subscriber line count, rate of growth, and revenues. With respect to Defendants Stringer and Chandler, moreover, the allegations are sufficient to create a strong inference that they acted intentionally in doing so.

First, the Complaint includes specific and detailed allegations of how Rhythms management presided over a varied and systematic effort to manipulate and inflate Rhythms subscriber line counts, central office counts, and revenues. (Cons. Class Action Compl. ¶¶ 40–53.) The effort included Defendants Stringer and Chandler explicitly ordering subordinates to perform inappropriate reclassifications. (*Id.* ¶ 41.) Second, Plaintiffs contend that line count manipulations were performed until midnight of the day before the numbers were reported to the investing public at the end of each quarter. (*Id.*) As officers of the company, each of the Defendants monitored closely the number of new and existing subscriber line counts via Company databases such as the Symphony database. (*Id.* ¶¶ 38, 39, 92.) Even if individual Defendants Hapka and Braukman are not alleged to have directly ordered the line count manipulations to be performed, seeing the line count total increase significantly until midnight of the last day of each reporting period and then reporting the increased numbers to the public is the kind of "extreme departure from the standards of ordinary care" that constitutes "recklessness" as defined in *Anixter* and upheld as the standard in *Fleming*.

Finally, the fact Rhythms' reported revenues were based on its subscriber line count and would increase upon a line being classified as "installed" in the Company's internal database, the overstated line count led Rhythms to report overstated revenues both to the public and market analysts. (*See id.* ¶ 53.) Viewed in their totality, these allegations are sufficient to create a "strong inference" that Defendants knew and intentionally overstated their line count and therefore their revenues, or that they were "reckless" in their disregard of suspicious line count increases recorded in Company databases during the last hours of each quarter. Because of the importance to the market of a company's quarterly revenues and a DSL provider's

subscriber line count, the danger that overstating these indicators by as much as twenty-five percent would mislead buyers and sellers of securities was either known to the Defendants or so obvious that such knowledge may properly be attributed to them.[3]

### 4. *Brown's Allegations Create a Presumption of Reliance.*

The "fraud on the market" theory creates a rebuttable presumption of reliance in securities fraud cases. *Basic Inc. v. Levinson*, 485 U.S. 224, 245–247, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The theory is based on the hypothesis that buyers and sellers of securities rely on the integrity of an efficient market, which reflects all information available to the public, including misinformation, in the market price of a stock. *Id.* When a false statement artificially inflates the price of a stock, it is presumed purchasers have relied on the market to their detriment. *In re Accelr8 Tech. Corp. Sec. Litig.*, 147 F.Supp.2d 1049, 1056 (D.Colo.2001)(applying *Basic* ).

Plaintiffs who invoke the "fraud on the market" doctrine must plead that the securities were traded on an efficient market. *Ribozyme*, 119 F.Supp.2d at 1164. When assessing the efficiency of a market, courts consider whether (1) the stock trades at a high weekly volume; (2) securities analysts follow and report on the stock; (3) the stock has market makers and arbitrageurs; (4) the company is eligible to file SEC Form S–3; and (5) there are empirical facts showing a cause and effect relationship between unexpected corporate events or financial releases and an immediate response in the stock price. *Id.* No bright-line rule exists as to how many factors must be pleaded before a plaintiff is entitled to the presumption of reliance. *Id.*

Here, Plaintiffs allege Rhythms common stock was listed and actively traded on the NASDAQ. (Cons.Class Action Compl. ¶ 97(a).) The stock was followed and reported on by several securities analysts employed by major brokerage firms (*Id.* ¶ 97(d)) and that the Company filed S–3 Forms during the Class Period (*Id.* ¶¶ 67, 71, 74). These allegations are sufficient to support the assertion that Rhythms stock traded in an efficient market, which allows Plaintiffs, in turn, to invoke the presumption of reliance under the "fraud-on-the-market" doctrine.

### 5. *Brown Has Adequately Pleaded Damages and Causation.*

Brown's allegations regarding causation are limited to the assertion that Defendants' false and misleading overstatements of the Company's subscriber line count and revenues artificially inflated prices during the Class Period and caused them to suffer damages when the price of shares they purchased during the class period plummeted from a high of $48.875 per share in 2000 to $0.3125 per share in 2001. (Consolidated Compl. ¶ 107.) Defendants contend these allegations are inadequate to establish the element of "loss causation," i.e., that Plaintiffs' losses were

---

**3.** The Complaint also includes allegations that Defendants had both the "motive and opportunity" to engage in fraud, which was an alternate method of pleading scienter in pre-PSLRA cases. *See Fleming* at 1261–62 (agreeing with First and Sixth Circuits that allegations of motive and opportunity may be important to the totality of the circumstances considered in assessing the adequacy of a plaintiff's scienter allegations, but are typically "not sufficient in themselves to establish a 'strong inference' of scienter"). Because I find the allegations in the Consolidated Complaint sufficient to create a strong inference of scienter under the more direct recklessness standard, I do not address the "motive and opportunity" allegations specifically.

actually caused by Defendants alleged misrepresentations and not by some broader decline in the market unrelated to Defendants' conduct. The issue is one of proximate, as opposed to "but for" cause, with Defendants arguing Brown's allegations are insufficient to create an inference of the former.

It is not Plaintiffs' burden to prove loss causation in the pleadings. *Accelr8*, 147 F.Supp.2d at 1057. The bulk of Defendants' arguments speak to the merits of the case and turn on competing factual assertions not appropriate for weighing at this stage of the proceedings. In ruling on the instant motion, I accept Brown's allegations as true and conclude loss causation has been adequately pled.

Invoking Judge Posner's decision in *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 685 (7th Cir.1990), Defendants argue the mere allegation of "damage" resulting from misrepresentations that artificially inflate stock prices is insufficient to establish "loss causation" in securities fraud class actions. While Defendants do not misstate the holding in *Bastian*, I find that case, which arose in the context of the unforeseen market-wide oil and gas crash of the mid–1980s, constitutes a high-water mark in the area of causation pleading and does not persuade me to adopt the heightened pleading standard urged here. *See In re Reliance Securities Litigation*, 91 F.Supp.2d 706, 727 (D.Del.2000) (distinguishing case from *Bastian* as not involving event "wholly out of [defendant's] control, such as a collapse in oil prices, that allegedly caused the loss complained of"). Defendants reliance on *In re Sprint Corp. Sec. Litig.*, 232 F.Supp.2d 1193, 1228 (D.Kan.2002), is similarly unpersuasive. While it is true class action plaintiffs in securities fraud actions must tie their alleged losses to a defendant's particular misrepresentation to satisfy the causation requirement for pleading purposes, I am unpersuaded they must do so with the particularity urged by Defendants. Indeed, the allegations deemed adequate in *Sprint* were that defendants omitted material information and made misrepresentations regarding the likelihood of a merger such that plaintiffs paid artificially inflated prices for their stock, and "when the truth regarding merger was finally revealed, the price of Sprint's stock fell." *Sprint*, 232 F.Supp.2d at 1228. While Defendants quibble about the timing of the "truth" coming out and its effect on Rhythms' stock prices, I find the gist of Brown's allegations quite similar to those in *Sprint* and disagree the case compels any determination that Brown's allegations are insufficient under a 12(b)(6) standard.

6. *Plaintiffs' Opposition to Defendants' Evidence and Exhibits.*

In their briefing Defendants ask me to take judicial notice of their Exhibits A, B, C, D, E, F, G and M and of the second paragraph of page twelve of their Memorandum of Law in Support of Their Motion to Dismiss. Brown, on behalf of the plaintiff class, objects. (Lead Pl.'s Opp'n Defs.' Req. Judicial Notice at 1.) Because it was unnecessary to refer to any of the contested materials in considering Defendant's motion, I note the objection and deny Brown's request that these materials be stricken from the record.

### Conclusion.

The allegations in the Consolidated Class Action Complaint satisfy the requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA and are sufficient to state a claim for violation of sections 10(b) of the Exchange Act and SEC Rule 10b–5. Defendant's Motion to Dismiss the Complaint is DENIED.